Filed 12/11/17

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

TIMOTHY RUEBEN RACE,

    Defendant and Appellant.

E066059

(Super.Ct.No. FVI1501969)

O P I N I O N

APPEAL from the Superior Court of San Bernardino County. Lisa M. Rogan, Judge. Affirmed in part and reversed in part with directions.

Susan S. Bauguess, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Eric A. Swenson, Lynne G.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II. B. and C.

McGinnis, Kristine A. Gutierrez, and Daniel J. Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant, Timothy Rueben Race, pled no contest to attempted lewd and lascivious acts on a child under the age of 14, the lesser included offense of the count 2 charge. (Pen. Code, §§ 664, 288, subd. (a).)[1] Pursuant to the plea agreement, the court sentenced defendant to the upper term of four years' imprisonment. The court limited defendant's conduct credit award to 15 percent pursuant to section 2933.1. The court additionally issued a 10-year criminal protective order pursuant to section 136.2, subdivision (i)(1) as to both defendant's daughter and niece.

On appeal, defendant contends the court erred in issuing a criminal protective order as to his daughter, the victim described in count 1 of the information, because he did not plead to any offense with respect to her. Thus, defendant argues his daughter is not a "victim" for purposes of issuing a criminal protective order. Defendant additionally asserts the court erred in limiting his award of conduct credits to 15 percent pursuant to section 2933.1. Finally, defendant maintains the minute orders dated February 26 and March 25, 2016, must be corrected to accurately reflect that defendant pled guilty to a lesser included offense of count 2, not count 1. We reverse and remand for a proper custody calculation and correction of the minute orders. In all other respects, the judgment is affirmed.

---

[1] All further statutory references are to the Penal Code.

## I. FACTUAL AND PROCEDURAL HISTORY[2]

In July 2015, personnel from the Bismarck Police Department and the North Dakota Children Advocacy Center provided an officer from the San Bernardino County Sheriff's Department reports reflecting that defendant's then 12-year-old daughter (born in April 2003) had been the victim of sexual abuse. The officer conducted a follow-up interview with defendant's daughter by telephone on July 15, 2015. Defendant's daughter reported that in May 2014, at defendant's home in California, defendant woke her by kissing her "on the mouth, inserting his tongue into her mouth." "He then placed his hand on [her] vagina and began rubbing. It was—it was skin-to-skin contact . . . ."

Defendant's daughter also reported that in June 2014, defendant "came into the room, pressed her up against the wall, proceeded to kiss her on the mouth, again inserting his tongue into her mouth, and then . . . he made her touch his private area with her hand." The contact with her hand and defendant's privates was "skin-to-skin." Defendant told his daughter "not to say anything to anyone otherwise he would hurt her."

During a pretextual telephone call conducted by another officer, defendant "was very hesitant to talk. He claimed that the matters had already been discussed and investigated and were preparing to go to court, and was accusing [the officer] of interfering with matters that have already been discussed." Defendant "asked if [his daughter] was referring to the goodnight kiss on the mouth that they do as part of their

---

[2] Both parties utilize the preliminary hearing transcript for their recitation of facts. We shall do likewise.

3

family or if she was referring to the touching when he was rubbing her stomach and thighs to check her digestion." Defendant denied touching his daughter's vaginal area.

On March 26, 2015, another officer was contacted by the mother of defendant's niece who reported that her daughter (born in May 2006) had reported that defendant touched her privates. The officer interviewed the niece, who reported that defendant "grabbed her with both hands on either side of her hips and started to pull her back towards him." She told him to stop, but defendant "reached a hand under her dress and grabbed her on the buttocks." He stopped, but then grabbed her again and sat her on his lap. The niece got off defendant, but "he grabbed her and spun her around to face him before reaching another hand underneath her dress and touching her on the vagina[1] area outside of her underwear."

The niece ran into her mother's room; defendant followed. Defendant "pushed her onto the bed so she was laying on her back and grabbed her—both of her hands and pinned them to the bed above her head and laid on top of her." She freed her hands; she then pushed and slapped him. Defendant got off her and walked into the restroom. He "sat down on the toilet and told her that she could stay and watch if she wanted to." The niece immediately ran outside and told her mother what had happened.

An officer discussed the incident with defendant the following day. Defendant said that he was roughhousing with his niece, but she began to hurt him. He told her to stop several times before he picked her up and threw her on the bed. Defendant admitted using the restroom and leaving the door open. He denied placing his niece on his lap,

4

laying on top of her, touching her in any way, or telling her she could watch him use the restroom.

Defendant's niece participated in a forensic interview at the Children's Assessment Center on April 15, 2015. She told the interviewer she was "over" talking about the incident. She said "that she wanted [defendant] to go to jail because grown-ups weren't supposed to do something wrong to their nieces[.]"

The People charged defendant by felony information with two counts of lewd and lascivious acts upon a child under the age of 14 years. (§ 288, subd. (a); counts 1 (his daughter) & 2 (his niece).) Defendant pled guilty as recounted above. The court dismissed the remaining counts. The parties stipulated the complaint and police report would provide the factual basis for the plea, "[o]nly as to the admitted counts of those facts."

As part of the plea, defendant executed a *Harvey*[3] waiver, which read: "I waive my rights regarding dismissed counts and/or allegation(s) and any charges the district attorney agrees not to file to the extent that the Court may consider these factors in deciding whether or not to grant probation and in deciding whether or not to impose a midterm, aggravated or mitigated prison term, the appropriate presentence credits, and as to restitution."

In the probation officer's report, the officer recommended awarding defendant a total of 231 days of custody credit, consisting of 201 actual days and 30 conduct days

---

[3] *People v. Harvey* (1979) 25 Cal.3d 754, 758.

computed pursuant to section 2933.1. At sentencing, defense counsel argued that defendant was not limited to 15 percent conduct credits pursuant to section 2933.1 because the offense to which he pled was not one of the offenses listed in section 667.5, subdivision (c). The People responded that they considered defendant's offense a violent felony; ergo, they contended the 15 percent restriction on custody credits should apply. The court stated: "I am going to stick with . . . [section] 2933.1 since no one has any law or specific direction for me to look at at this time. And it can be taken up on appeal." The court awarded defendant 213 days of actual credit, but did not award any conduct custody credit.

The People requested issuance of a 10-year criminal protective order as to both defendant's daughter and niece. Defense counsel responded: "Normally I would object, but since I believe their ages were eight and ten year[s], ten years before they are adults, I am not going to object. [Defendant] does not object." When asked by the court if he had any questions regarding the protective order, defendant responded: "I am not worried about that."

## II. DISCUSSION

A. *Criminal Protective Order*

Defendant contends the court erred in imposing the criminal protective order as to his daughter because she was not a "victim" of any offense of which he was convicted. In addition to arguing the criminal protective order was legally authorized, the People maintain defendant forfeited the issue by failing to object below. We hold that section

6

136 defines a "victim" in a broad enough manner in which to include a victim of a charged count of which defendant does not stand convicted so long as the court had some competent evidence before it with which to conclude there was reason to believe the individual was a victim of a broadly defined domestic violence related offense involving harm or attempted harm such that a criminal protective order should be issued.

Section 136.2, subdivision (i)(1) provides, in pertinent part: "In all cases in which a criminal defendant has been convicted of a crime involving domestic violence . . . , the court, at the time of sentencing, shall consider issuing an order restraining the defendant from any contact with the victim. The order may be valid for up to 10 years, as determined by the court . . . . It is the intent of the Legislature in enacting this subdivision that the duration of any restraining order issued by the court be based upon the seriousness of the facts before the court, the probability of future violations, and the safety of the victim and his or her immediate family." "As used in the chapter containing section 136.2, subdivision (i)(1), "'[v]ictim" means any natural person with respect to whom there is reason to believe that any crime as defined under the laws of this state . . . is being or has been perpetrated or attempted to be perpetrated.' (§ 136, subd. (3).)" (*People v. Delarosarauda* (2014) 227 Cal.App.4th 205, 211 (*Delarosarauda*); accord, *People v. Beckemeyer* (2015) 238 Cal.App.4th 461, 465 (*Beckemeyer*).)

"'Issues of statutory interpretation are questions of law subject to our independent or de novo review. [Citations.] "The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law.

[Citations.]  In order to determine this intent, we begin by examining the language of the statute.  [Citations.]  But '[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.'  [Citations.]  Thus, '[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.'  [Citation.]  Finally, we do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.'"  [Citation.]'  [Citation.]" (*Delarosarauda*, *supra*, 227 Cal.App.4th at p. 210; accord, *Beckemeyer*, *supra*, 238 Cal.App.4th at p. 465.)  With respect to the issuance of a legally authorized criminal protective order, """"We imply all findings necessary to support the judgment, and our review is limited to whether there is substantial evidence in the record to support these implied findings."'  [Citation.]" (*People v. Therman* (2015) 236 Cal.App.4th 1276, 1279.)

In *Beckemeyer*, the defendant pled guilty to the attempted murder of a woman whom he had previously dated; defendant additionally pled guilty to one count of assault with a deadly weapon against his previous girlfriend's son.  (*Beckemeyer*, *supra*, 238 Cal.App.4th at p. 464.)  The court issued a 10-year protective order restraining the defendant from having contact with both victims.  (*Id*. at pp. 463-464.)

On appeal, the defendant contended the protective order as to the girlfriend's son must be stricken as he was not a victim of domestic violence as defined by statute.

8

(*Beckemeyer*, *supra*, 238 Cal.App.4th at pp. 464-465.)  The court restated the statutory definition of a "victim," observing that "for purposes of a section 136.2 protective order, 'victim' is broadly defined in section 136 as any person against whom there is reason to believe a crime has been committed."  The court noted that:  "When enacting section 136.2[, subdivision] (i)(1) to permit 10-year postconviction protective orders in domestic violence cases, the Legislature was aware of this broad definition of victim generally applicable to section 136.2 protective orders, and it did not enact a provision narrowing its scope for purposes of a postconviction domestic violence protective order."  (*Id*. at p. 466.)  Thus, because the defendant pled guilty to committing a crime against the girlfriend's son during a domestic violence incident, the girlfriend's son "readily" fell within the statutory definition of a victim pursuant to section 136.2.  Therefore, the court properly issued the criminal protective order as to the girlfriend's son.  (*Id*. at pp. 466-467.)

In *Therman*, the People charged the defendant with, among other offenses, inflicting corporal injury on his spouse.  The defendant pled no contest to felony false imprisonment.  The court issued a criminal protective order with respect to the victim.  On appeal, the defendant contended, and the People conceded, that the court did not have authority to issue the protective order.  (*People v. Therman*, *supra*, 236 Cal.App.4th at p. 1277.)  The court disagreed.  The court held "that the record supports an implied finding that defendant committed 'abuse' against his spouse within the meaning of section

9

13700, and therefore committed a crime of domestic violence such that the protective order was authorized by section 136.2, subdivision (i)." (*Id*. at p. 1279.)

In *Delarosarauda*, a jury convicted the defendant of corporal injury to a spouse or cohabitant, assault by means likely to produce great bodily injury, assault with a deadly weapon, and misdemeanor vandalism. The jury additionally found true an allegation the defendant had used a deadly weapon during the corporal injury offense. The defendant had committed all of the offenses against his spouse or cohabitant. (*Delarosarauda*, *supra*, 227 Cal.App.4th at p. 208.) After sentencing, the court issued a criminal protective order as to the victim and her two children. (*Id*. at p. 209.)

After appellate court personnel filed the record, the defendant's counsel filed a motion in the trial court seeking to correct the protective order. At the hearing on the motion, counsel argued the court was not authorized to issue the protective order with respect to the victim's children because they were not domestic violence victims. The court found that one of the children was a "'collateral' victim because she witnessed the incident." The court also found that because the "'collateral victim'" was an "'immediate family member[],'" she also qualified as a victim pursuant to section 136.2. As to the victim's son, the court declined to lift the protective order, but signified its willingness to do so if the defendant obtained a family court order allowing him to have contact with the son. (*Delarosarauda*, *supra*, 227 Cal.App.4th at p. 210.)

On appeal, the court held that "absent evidence from which the trial court could reasonably conclude that appellant had harmed or attempted to harm [the children], the

court lacked authority to issue the no-contact protective order as to the children under section 136.2, subdivision (i)(1)." (*Delarosarauda*, *supra*, 227 Cal.App.4th at p. 212.) Thus, the court held the court had improperly issued the criminal protective order with respect to the children. (*Id*. at pp. 213-214.) Nevertheless, in dicta, the court noted that the subject of a protective order pursuant to section 136.2, subdivision (i)(1) need not be a named victim of one of the offenses for which the defendant stood convicted; rather, such a protective order could issue with respect to someone against whom some evidence suggested the individual had been "targeted or harmed" by the defendant. (*Delarosarauda*, *supra*, at p. 212.)

We distill from the cases discussed *ante*, the rule that the term "victim" pursuant to section 136.2 criminal protective orders must be construed broadly to include any individual against whom there is "some evidence" from which the court could find the defendant had committed or attempted to commit some harm within the household. In the instant case, sufficient evidence supported the criminal protective order issued with respect to defendant's daughter.[4]

Here, defendant stipulated that the police report and complaint would provide a factual basis for the plea. The police report reflects that defendant's daughter disclosed

_____

[4] Having concluded that the court's protective order as to defendant's daughter was legally authorized, we discuss the sufficiency of the evidence to support that order only to forestall defendant's ineffective assistance of counsel claim. In other words, we agree with the People that defendant has forfeited the issue of whether sufficient evidence supported the order because defendant not only failed to raise the issue below, but agreed to the issuance of the protective order. (*People v. Trujillo* (2015) 60 Cal.4th 850, 856-857.)

11

that defendant had sexually assaulted her; he kissed her with an open mouth, touched her vaginal area, and compelled her to touch his genitalia. The complaint alleged that defendant had committed lewd and lascivious acts upon his daughter. An officer testified at the preliminary hearing that defendant's daughter reported defendant kissed her, inserting his tongue into her mouth; defendant further touched her genitalia and forced her to touch his. This was sufficient evidence for the court to conclude that defendant's daughter had been harmed within the household such that a protective order against him should issue.

Defendant contends the evidence contained in the police report, preliminary hearing, and complaint could not be considered by the court because defendant's *Harvey* waiver did not extend to the issuance of the protective order. We agree that neither defendant's *Harvey* waiver nor his stipulation to a factual basis for the plea extended to the facts underlying the count 1 charge, to which defendant did not plead, with respect to most issues other than sentencing. However, we hold that in considering the issuance of a criminal protective order, a court is not limited to considering the facts underlying the offenses of which the defendant finds himself convicted, regardless of the execution of a *Harvey* waiver. Rather, in determining whether to issue a criminal protective order pursuant to section 136.2, a court may consider all competent evidence before it. Here, the court had before it sufficient competent evidence with which to properly determine that a criminal protective order as to defendant's daughter should issue.

Defendant further contends the criminal protective order was the functional equivalent of an order terminating his parental rights without affording him due process of law. First, defendant was afforded due process in that he was given ample opportunity to argue against the issuance of the protective order. Instead, both defendant and his counsel agreed to issuance of the order. Second, the criminal protective order is not the functional equivalent of an order terminating parental rights. As the People note, unlike a parent who has had his parental rights terminated, defendant can move the court to rescind the order upon his release from prison. (§ 136.2, subd. (a)(1)(G)(i); *Delarosarauda*, *supra*, 227 Cal.App.4th at p. 211.) Moreover, section 136.2 provides mechanisms for cooperation between the criminal, juvenile, and family law courts to permit communication by the subject of the criminal protective order with members of his family if appropriate. (§ 136.2, subds. (e)(3), (f); *Delarosarauda*, *supra*, at p. 211.) Thus, the court properly issued the criminal protective order with respect to defendant's daughter.

B. *Conduct Credits*

Defendant contends the court erred in limiting his award of conduct credits to 15 percent pursuant to section 2933.1. The People concede the error. We agree.

"A defendant convicted of a violent felony is limited as to the amount of presentence and postsentence custody credits that can be earned. [Citation.]" (*People v. Singleton* (2007) 155 Cal.App.4th 1332, 1336-1337.) "[A] defendant convicted of a violent felony can earn a maximum of 15 percent in custody credits, thereby ensuring that

he or she serves at least 85 percent of the sentence imposed." (*Id*. at p. 1337.) "Notwithstanding any other law, any person who is convicted of a felony offense listed in subdivision (c) of Section 667.5 shall accrue no more than 15 percent of worktime credit, as defined in Section 2933." (§ 2933.1, subd. (a).) "A sentence that fails to award legally mandated custody credit is unauthorized and may be corrected whenever discovered. [Citation.]" (*People v. Taylor* (2004) 119 Cal.App.4th 628, 647; accord, *People v. Chilelli* (2014) 225 Cal.App.4th 581, 591.)

Attempted lewd and lascivious acts upon a child under the age of 14 is not an offense specifically listed in section 667.5, subdivision (c). Therefore, the offense of which defendant stands convicted is not considered a violent felony; therefore, defendant was not limited to an accumulation of only 15 percent conduct credits. Moreover, the court neglected to award any conduct credits. Thus, we remand the matter to the court to properly calculate defendant's custody credits.

C. *Correction of Minute Orders*

Defendant contends the minute orders dated February 26 and March 25, 2016, must be corrected to accurately reflect that defendant pled guilty to a lesser included offense of count 2, not count 1. The People concede the issue. We agree.

"'When there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls.' [Citation.] A reviewing court has the authority to correct clerical errors . . . .

[Citations.]" (*People v. Contreras* (2009) 177 Cal.App.4th 1296, 1300, fn. 3; accord, *People v. Scott* (2012) 203 Cal.App.4th 1303, 1324.)

Here, the minute order for February 26, 2016, reads: "Count 1 is amended to [sections] 664/288[, subdivisions] (A)-F: Attempt Lewd Or Lascivious Acts W/Child – Felony." The reason given is that the amendment was "Pursuant to Plea Bargain." Likewise, the minute order dated March 25, 2016, reflects that: "Defendant pleads No Contest as to 1. [Sections] 664/288[, subdivisions] (A)-F: Attempt Lewd Or Lascivious Acts W/Child Order of the Court Plea change on 02/26/2016." It further reads: "1. [Sections] 664/288[, subdivisions] (A)-F: Attempt Lewd Or Lascivious Acts W/Child Disposition amended to Convicted – Plea Reason: Order of the Court." However, both the plea agreement and the reporter's transcript of the plea reflect that defendant instead pled no contest to attempted lewd acts upon a child as a lesser included offense of the count 2 charge. Thus, on remand the court is directed to correct the minute orders to accurately reflect defendant's plea.

## III. DISPOSITION

The judgment is reversed in part and the cause is remanded to the court to calculate and award defendant custody credits without the limitations imposed by section 2933.1. The court is further directed to correct the minute orders dated February 26 and March 25, 2016, to reflect defendant pled to a lesser included offense of the count 2 charge. The court shall forward a copy of the new abstract of judgment to the

15

Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

CERTIFIED FOR PARTIAL PUBLICATION

McKINSTER          

                        J.

We concur:

RAMIREZ          
         P. J.

MILLER          
         J.