Filed 4/19/22  P. v. Peppers-Valdovina CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARKIQUES PEPPERS-VALDOVINA,<br><br>    Defendant and Appellant. | A162575<br><br>(Sonoma County<br>Super. Ct. Nos. SCR741511-1,<br>SCR743147-1) |

Defendant Markiques Peppers-Valdovina was sentenced to three years and eight months in state prison after he pleaded guilty to two counts of violating a prior domestic relations protective order and stay away order (Pen. Code,[1] § 166, subd. (c)(4)) and one count of resisting arrest by threats and violence (§ 69, subd. (a)).  At sentencing, the trial court issued a post-conviction criminal protective order under section 136.2 requiring defendant to stay away from the victim, Jane Doe, and their one-year-old daughter.  The sole issue on appeal is whether the trial court lacked statutory authority to include the daughter in the protective order.  We shall reverse the criminal protective order as to defendant's daughter because it is unsupported by the evidence.

---

[1] All undesignated statutory references are to the Penal Code.

1

## FACTUAL AND PROCEDURAL BACKGROUND

We briefly summarize the procedural history of this case, which encompasses the negotiated disposition of two criminal cases.

In the first case (SCR741511-1), on December 15, 2020, defendant pleaded guilty to one count of felony contempt of court for violating a protective order and stay away order from Jane Doe. (§ 166, subd, (c)(4).) Before he could be sentenced to the agreed upon probation, new charges were filed against him.

That was the second case (SCR743147-1). On April 2, 2021, defendant pleaded guilty to another felony count of contempt in connection with the protective order and stay away order from Jane Doe (§ 166, subd, (c)(4)), and one count of felony resisting arrest by threats and violence. (§ 69, subd. (a).)

At sentencing, the trial court issued a criminal protective order requiring defendant to stay away from Jane Doe and their one-year-old daughter. Defendant's counsel objected to the inclusion of the child in the protective order, arguing that the "circumstances in [this] case . . . had nothing at all to do with the one-year-old daughter" and there was thus no "reasonable rational basis" to preclude defendant from having contact with the child.[2] Defendant's counsel also asserted that Jane Doe, the child's mother, did not have custody of the daughter, who lived with her grandparents in a different county.

The prosecutor responded that the "domestic violence incident occurred right outside of the apartment where Jane Doe and her daughter were staying," and the daughter "was merely inside the apartment." She argued that "there's a basis for the child to be protected given the child was in close

---

[2] In this part of the transcript, the prosecutor repeatedly referred to this case as "case 147," meaning the case that ended in number "147."

proximity in [this] case 147." She also stated that the child resided with Jane Doe and Jane Doe's father.

The court asked whether there were "any family law orders that allow [defendant] visitation" of the child "separate and apart" from Jane Doe. This question did not appear to be resolved at the sentencing hearing. The prosecutor asked the court to check "Box 16-B" on the form criminal protective order allowing for peaceful conduct in future family court orders for the safe exchange of the child "if that becomes an issue."

The court replied, "That seems to me to be the answer here . . . . Because of this situation, there should be family law orders or some written agreement with the parties regarding the safe exchange once he finishes his state prison term. [¶] So I do have the CPOs [criminal protective orders] in front of me. I'm going to check the Box 16 that says may have peaceful contact for the safe exchange of the children and court ordered visitation. Okay?" The court clarified in response to a question from the clerk that it intended box "16" not "16-B," and then signed the orders, stating "So it's a stay away from Jane Doe and stay away from the one-year-old except for family law orders."

On the form Judicial Council order issued by the court, Jane Doe and the one-year-old are each listed as a "protected person," and defendant is to have no contact of any type with either of them, or through a third party, or come within 100 yards of either of them (as per boxes 12, 13, and 14). [3]

_____

[3] Court and counsel were referring to mandatory Judicial Council Form CR-160, "Criminal Protective Order – Domestic Violence (CLETS – CPO)." Box 16, which the court checked, states defendant "may have peaceful contact with the protected persons named above, as an exception [sic] to the 'no-contact' or 'stay-away' provisions in item 12, 13, or 14 of this order, only for the safe exchange of children and court-ordered visitation as stated in:" and then there are two boxes, "a" and "b." The court checked neither box. Box "a"

Defendant obtained a certificate of probable cause, and this appeal was timely filed.

## DISCUSSION

When a defendant has been convicted of a crime involving domestic violence, as that term is defined in Family Code section 13700 or Family Code section 6211, the court, at the time of sentencing, "shall consider issuing an order restraining the defendant from any contact with a victim of the crime. The order may be valid for up to 10 years, as determined by the court. . . . It is the intent of the Legislature in enacting the subdivision that the duration of a restraining order issued by the court be based upon the seriousness of the facts before the court, the probability of future violations, and the safety of a victim and the victim's immediate family." (§ 136.2, subd. (i)(1) (§ 136.2(i)(1)).)

For purposes of this subsection, "victim" means "any natural person with respect to whom there is reason to believe that any crime . . . is being or has been perpetrated or attempted to be perpetrated." (§ 136, subd. (3).[4])

Here defendant does not challenge the protective order for Jane Doe. The sole dispute is whether the one-year-old child was also a "victim" under the statute. The interpretation of a statute, such as section 136.2, is a question of law, subject to de novo review. (*People v. Race* (2017) 18 Cal.App.5th 211, 217 (*Race*).) With respect to the issuance of the protective

is for an already issued "Family, Juvenile, or Probate court order," with space for the court to fill in the case number and the date of issuance, spaces that were left blank. Box "b" is for "any Family, Juvenile or Probate court order issued *after* the date this order is signed." That box was left blank, too.

[4] The definition of "victim" as quoted in the text comes after prefatory language in the statute that states "[a]s used in this chapter." (§ 136.) Sections 136 and 136.2 appear in the same chapter of the Penal Code.

order, we " ' " "imply all findings necessary to support the judgment, and our review is limited to whether there is substantial evidence in the record to support these implied findings.' " ' " (*Ibid*.)

First, we describe some additional factual background, drawn from the probation office's reports in defendant's two cases.

*Additional Background*

In the first case (SCR741511-1), police responded on October 4, 2020, to an address on Russell Avenue after a call from Jane Doe reporting her boyfriend (defendant) had hit her on the head. She reported that she was a few weeks pregnant, might need an ambulance, did not feel safe leaving the residence with defendant present, and that there was an active restraining order against him. Officers could not locate defendant at the scene. Doe was taken to the hospital where she later gave a statement. Doe said she and defendant had been in a dating relationship for about three years, they had a one-year-old child in common, they did not live together and were both transient. She and defendant had been staying at his brother's apartment for "multiple days." Defendant prevented her from leaving and threatened to "break her neck;" at one point he said he would kill her if she left. The day before the incident, when she attempted to leave, he grabbed her left bicep and caused visible bruising. In another incident the day before, when defendant heard Doe tell another person who resided at the apartment that she was going to leave, defendant grabbed her and punched her, causing her to sustain hearing loss in one ear, and a bruise on her jaw and her forearm. There was no mention of the child being present at any of these incidents.

In the second case (SCR743147-1), police officers went to the "600 block" of Russell Avenue responding to a "reported domestic disturbance" on December 19, 2020. There the officers found Jane Doe, who was crying and

5

had swelling and a "one-inch blue bruise" on her cheek. She reported that defendant, her ex-boyfriend, punched her in the face several times and then barricaded himself in the laundry room of the apartment complex. Officers searched for him but could not find him. Doe stated she and defendant had been in a dating relationship until June of that year, they had a one-year-old child, and Doe had full custody. According to the probation office's report, "Doe said the child did not witness the following incidents." Doe reported that she was visiting defendant's sister, who lived at the apartment complex, and Doe believed defendant was in custody at the county jail. But when she went outside to smoke a cigarette at about 8:13 p.m., defendant arrived suddenly. They argued. He punched her in the face, lifted her off the ground by grabbing her under the chin and threatened to put her in the hospital or to kill her if he didn't put her in the hospital. Doe called law enforcement but couldn't provide her location before defendant grabbed her cell phone. She ran around the corner for safety, and he fled. Doe thought defendant was on methamphetamine and said his behavior was "paranoid and crazy." Doe said she had been battered by defendant "approximately 100 times during their three-year relationship."

Shortly after midnight, Doe contacted law enforcement again because she saw defendant peeking through the windows. An officer responded but could not locate defendant. Doe called law enforcement about 3:00 a.m. to say she had heard defendant outside. An officer arrived and found him in a tree in "the common area of the apartment complex." The probation officer's report relates that "[a]n officer subsequently transported the victim and her child from the scene." Eventually, multiple officers set up a perimeter and the Santa Rosa Police Department hostage negotiation team responded and tried to talk defendant down from the tree. He made statements that they

6

would have to shoot him to get him to come down, and that he knew he was going to jail so he would stay in the tree. Family members tried to persuade him, but without success. "Ultimately, based on the fact that the victim was safe in a different county, the emotional volatility of the relatives, and the defendant's violent history with law enforcement, the officers ceased from trying to arrest [defendant] that day."

*Protective Order Under Section 136.2(i)(1)*

Defendant contends that the criminal protective order as to his one-year-old child was not supported by substantial evidence because the child was not present and did not witness the acts of domestic violence. While he acknowledges the applicable definition of "victim" is broad, defendant argues that no published case supports a post-conviction criminal protective order for a child who, as here, was not physically present, and where there is no evidence that defendant's acts adversely affected her or that defendant harmed or attempted to harm her.

The Attorney General relies on two cases "as instructive" in support of its argument that defendant's one-year-old daughter is a victim for purposes of section 136.2(i)(1). We consider them in turn, but as will be seen, the facts in those cases are quite different.

In *Race supra,* 18 Cal.App.5th 211, the defendant was charged with two counts of lewd conduct upon a child under age 14, with the victims identified as defendant's daughter and his niece. Defendant pleaded no contest to the criminal count involving his niece, in exchange for dismissal of the count against his daughter. At sentencing, the trial court issued criminal stay away orders under section 136.2 as to both of the girls. Race appealed, contending that there was no authority to issue the protective order as to his daughter since she was not a victim of the crime to which he had pleaded. In

7

rejecting the claim, the Court of Appeal held that "the term 'victim' pursuant to section 136.2 criminal protective orders must be construed broadly to include any individual against whom there is 'some evidence' from which the court could find the defendant had committed or attempted to commit some harm within the household.  In the instant case, sufficient evidence supported the criminal protective order issued with respect to defendant's daughter." (*Id*. at p. 219.)  In *Race*, such evidence included the defendant's stipulation that the police report and the complaint provided a factual basis for the plea (documents which reflected the daughter's disclosure that defendant had sexually assaulted her and engaged in other lewd acts) and an officer's testimony at the preliminary hearing as to defendant's criminal acts against his daughter.  The Court of Appeal held that this was sufficient evidence to support the trial court's issuance of a stay away order from the daughter.  (*Id*. at p. 220.)  In so concluding, the court stated, "we hold that in considering the issuance of a criminal protective order, a court is not limited to considering the facts underlying the offenses of which the defendant finds himself convicted, regardless of the execution of a *Harvey*[5] waiver.  Rather, in determining whether to issue a criminal protective order pursuant to section 136.2, a court may consider all competent evidence before it." (*Id*. at p. 220.)

The other case the Attorney General relies on—*People v. Clayburg* (2012) 211 Cal.App.4th 86—concerns a different statutory provision that governs post-conviction protective orders after convictions for stalking (§ 646.9, subd. (k)(1)).  The trial court in *Clayburg* ordered defendant to have no contact with her former husband (B.) or with her minor daughter, who was then 13 years old and whose primary custodial parent was her father.  Although the daughter was not a named victim in the information, the Court

---

[5] *People v. Harvey* (1979) 25 Cal.3d 754.

8

of Appeal found that the daughter "suffered emotionally and . . . was traumatized by [the defendant]'s conduct. She was the recipient of a previously issued civil restraining order that she carried on her person." (*Id.* at p. 91.) In *Clayburg* there was abundant evidence about the daughter, including evidence about B. and the daughter listening to a telephone message in which the defendant said: " 'The devil wants you. God is going to let him get you and you are going to like it because you are [the devil's] brother.' . . . Daughter testified that the message 'made [her] scared.' " (*Id.* at pp. 90-91.) There was also evidence that on Christmas Day, "someone spread steer manure" all over B.'s porch and driveway, and a gift from the defendant to the daughter was found hanging on the front door-knob. The defendant later "told daughter that she was responsible for the manure." And there was much more, including daughter awakening at 1:30 a.m. to shattered glass windows in B.'s dining room, bedroom, and French doors, and B. seeing the defendant running down the driveway and her vehicle driving away. "Daughter testified that these incidents made her 'feel scared and just nervous.' . . . 'I was worried maybe my windows would be broken, and I was afraid it (the broken glass) was going to go through our blinds.' Because of her fear, daughter sometimes stayed at a relative's house." (*Id.* at p. 90.)

Against this background, the majority opinion in *Clayburg* construed these two sentences of section 646.9, subdivision (k)(1): " 'The court shall consider issuing an order restraining the defendant from any contact with the victim, that may be valid for up to 10 years, as determined by the court. [First sentence.] It is the intent of the Legislature that the length of any restraining order be based upon the seriousness of the facts before the court, the probability of future violations, and the safety of the victim and his or her immediate family. [Second sentence.]' " Acknowledging that the statute

9

"could have been drafted with greater precision," the *Clayburg* majority believed that the "Legislature intends that the courts protect a child of a named victim. The second sentence, to a certainty, shows that the Legislature has a legitimate concern for the 'safety' of a child of a named victim. We also observe that the actual definition of the crime of stalking speaks to the fear suffered by a member of the named victim's 'immediate family.' (§ 646.9, subd. (2).) Our construction of the statute 'promotes justice.' " (*Id*. at p. 89.)

The Attorney General does not address *People v. Delarosarauda* (2014) 227 Cal.App.4th 205, 211-212 (*Delarosarauda*), a case involving section 136.2(i)(1) protective orders, in which the appellate court rejected the *Clayburg* majority's construction of similar language in section 646.9: "The *Clayburg* majority held that the second sentence modified the first sentence, and expanded the meaning of 'victim' in the first sentence to include 'a member of the immediate family of a stalking victim . . . who suffers emotional harm.' . . . We read the second sentence to mean what it says: the court should consider, among other factors, the 'safety of the victim and his or her immediate family' in determining the length of the restraining order authorized in the first sentence. Nothing suggests the second sentence also modifies the scope of the restraining order. As noted by Justice Perren in the *Clayburg* dissent, if the term 'victim' in the first sentence included a child of the family, the second sentence would have no need to refer to 'the victim and his or her immediate family.' " (*Delarosarauda* at p. 212.)[6]

_____

[6] In *Delarosarauda*, the defendant was convicted of corporal injury to a spouse or coinhabitant, assault by means likely to produce great bodily injury, assault with a deadly weapon, and personal use of a deadly and dangerous weapon, a rope. But, in "contrast" to *Clayburg*, "no evidence suggests" the defendant Delarosarauda had targeted or harmed his son or

10

Based on our reading of the statute, and the authorities cited by the parties, a victim, for purposes of a section 136.2(i)(1) protective order, is any person as to whom there is reason to believe that any crime has been committed. (§ 136, subd. (3); *Race, supra,* 18 Cal.App.5th at p. 219.) Here the record does not support the trial court's conclusion that the one-year-old child was a proper subject of the criminal protective order. It is undisputed there is no evidence that the daughter was present, let alone involved, in the October 4, 2020 incident. As to the events of December 19, 2020, the only evidence concerning the child comes from the statement in the probation officer's report that "Doe said their child did not witness the following incidents." Further, the December 19 incident occurred during the evening outside of an apartment where Jane Doe and her daughter were visiting defendant's sister, and there was no evidence the child was outside. Thus, we cannot say there is "any reason to believe that any crime" was being "perpetrated" or "attempted" by defendant against the child. (§ 136, subd. (3).)

---

stepdaughter, and "absent evidence from which the trial court could reasonably conclude that appellant had harmed or attempted to harm" them, the court "lacked authority" to issue a protective order against the children under section 136.2(i)(1). (*Delarosarauda, supra,* 227 Cal.App.4th at p. 212.) In any event, *Delarosarauda* suggested in dicta that had a post-conviction protective order been sought in *Clayburg* under section 136.2(i)(1), one could have issued, because the "evidence established the defendant stalked the named victim and the victim's child, causing both to suffer emotional harm," thus bringing the child within the statutory definition of victim, as we have quoted above, under section 136, subdivision (3) ("any natural person with respect to whom there is reason to believe that any crime . . . is being or has been perpetrated or attempted to be perpetrated"). (*Delarosarauda, supra*, at p. 212.)

Unable to counter the absence of evidence, the Attorney General notes that even when a child is not the primary target of domestic violence, she can be harmed by seeing and hearing violence.[7] This proposition is indisputable. But there is no evidence that happened in the December 19 incident. The Attorney General speculates that the one-year-old "could have heard it," that she might have seen defendant peeking into windows, and that she "would have seen" Jane Doe's bruising, crying and distress, but speculation is not "some evidence" from which the court could find that the child was an "individual against whom . . . defendant had committed or attempted to commit some harm." (*Race*, *supra*, 18 Cal.App.5th at p. 219.)

## DISPOSITION

The matter is remanded to the trial court to revise the criminal protective order so that defendant's and Jane Doe's daughter is not listed as a protected person. In all other respects, the judgments are affirmed.

---

[7] The Attorney General cites *In re T.V.* (2013) 217 Cal.App.4th 126, 134 ("[e]xposing children to recurring domestic violence may be sufficient to establish jurisdiction under [Welfare and Institutions Code] section 300, subdivision (b)") and Welfare and Institutions Code section 18290 (legislative findings and declaration on domestic violence, including that "[c]hildren, even when they are not physically assaulted, very often suffer deep and lasting emotional effects").

 

_____
Miller, J.

WE CONCUR:


_____
Richman, Acting P.J.


_____
Stewart, J.


A162575, *People v. Peppers-Valdovina*