Filed 8/13/25

<u>CERTIFIED FOR PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B331827 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA478881) |
| v. | |
| OSCAR PENA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Renee Korn, Judge. Conviction affirmed, judgment reversed with directions.

John P. Dwyer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Ryan M. Smith, Deputy Attorney General, for Plaintiff and Respondent.

# INTRODUCTION

Penal Code section 136.2, subdivision (i)(1),[1] provides that, when a defendant has been convicted of certain crimes (such as domestic violence or a crime that requires the defendant to register as a sex offender), the trial court may issue "an order restraining the defendant from any contact with a victim of the crime." Oscar Pena was convicted on one count of misdemeanor sexual battery, which required him to register as a sex offender. The trial court issued a protective order, but not to protect a victim of the crime the jury found Pena committed. Instead, the court issued a protective order to protect a different victim, who was named in other counts on which the jury could not reach a verdict. Can the court do that?

Not anymore, after the Legislature amended the statute in 2018. We hold that the language in section 136.2, subdivision (i)(1), authorizing the court to issue a protective order for "a victim of the crime" means a victim of one of the enumerated crimes in the subdivision the defendant was convicted of committing. Because the trial court issued a protective order for a person who was not a victim of a qualifying crime Pena was convicted of committing, we vacate the protective order. Pena also argues, the People concede, and we agree the court imposed an unauthorized sentence on Pena's conviction for misdemeanor sexual battery. Therefore, we reverse the judgment and direct the trial court to correct Pena's sentence.

---

[1] Statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2019 Nathaly R. went to a Los Angeles Police Department station to report Pena, her brother-in-law, sexually assaulted her multiple times in 2013 and 2014, when Nathaly was 13 and 14 years old. Nathaly accused Pena of raping and orally copulating her at his house, where he lived with his wife, Mitzy R., Nathaly's older sister. Nathaly lived with her parents in a duplex that shared a gate with Pena and Mitzy's house.

Police officers investigated Nathaly's allegations and learned Pena groped a family friend, Evelin R., after a party at his and Mitzy's house in 2019. Evelin lived in an apartment in the downstairs portion of the duplex where Nathaly lived. After Evelin left the party, Pena followed her and tried to kiss her in the doorway of her apartment. Evelin pushed him and turned away, and Pena put "his hand over" Evelin's vagina from behind. Evelin grabbed Pena's hand, pushed him away again, and told him to go home to his wife.

Regarding Nathaly, the People charged Pena with four counts of committing a lewd or lascivious act on a child of 14 or 15 years (§ 288, subd. (c)(1)) and three counts of committing lewd or lascivious acts on a child under the age of 14 years (§ 288, subd. (a)). Regarding Evelin, the People charged Pena with one count of misdemeanor sexual battery (§ 243.4, subd. (e)(1)). The jury found Pena guilty on the misdemeanor count involving Evelin, but could not reach a verdict on the counts involving Nathaly. The trial court declared a mistrial on those counts, and the People decided not to retry Pena on them.

In March 2023 the trial court sentenced Pena for the misdemeanor conviction involving Evelin to 364 days in county

jail (with 364 days of credit), waived all fees and fines, ordered Pena to register as a sex offender under section 290, and issued a protective order for Nathaly under section 136.2, subdivision (i)(1). Pena timely appealed.

## DISCUSSION

A. *Section 136.2, Subdivision (i)(1), Did Not Authorize the Trial Court To Issue a Protective Order Including Nathaly*

1. *Applicable Law and Standard of Review*

Section 136.2, subdivision (i)(1) (section 136.2(i)(1)), provides in relevant part: "When a criminal defendant has been convicted of a crime involving domestic violence [as defined in enumerated statutes] . . . or a crime that requires the defendant to register [as a sex offender] pursuant to subdivision (c) of Section 290, the court, at the time of sentencing, shall consider issuing an order restraining the defendant from any contact with *a victim of the crime*." (Italics added.) Section 136 defines "victim" as "any natural person with respect to whom there is reason to believe that any crime as defined under the laws of this state or any other state or of the United States is being or has been perpetrated or attempted to be perpetrated." (§ 136, subd. (3).) Thus, "a postconviction protective order under section 136.2(i)(1) is authorized if: (1) the defendant has been convicted of one (or more) of the statutorily enumerated crimes; and (2) the protected person qualifies as a victim of said crime(s)." (*People v. Walts* (2025) 112 Cal.App.5th 127, 139 (*Walts*), internal quotation marks omitted; see *People v. Lopez*

4

(2022) 75 Cal.App.5th 227, 237 [children who were asleep at the time of a domestic violence incident were not "victims" of a domestic violence crime].)  "All findings necessary to support a protective order will be implied so long as there is substantial evidence to sustain such implied findings."  (*Walts*, at p. 139; see *People v. Race* (2017) 18 Cal.App.5th 211, 217 (*Race*).)

Whether section 136.2(i)(1) authorized the court to issue a protective order against Pena is an issue of statutory interpretation we review de novo.  (See *People v. Walker* (2024) 16 Cal.5th 1024, 1032; *People v. Serna* (2025) 109 Cal.App.5th 563, 569.)  "When interpreting a statute, a court's fundamental task is to determine the Legislature's intent so that the purpose of the statute may be effectuated."  (*In re Brissette* (2025) 112 Cal.App.5th 147, 160; see *Walker*, at p. 1032.)  "Courts begin by giving the statute's words a plain, ordinary, and commonsense meaning and then consider the words within the entire context of the statutory framework, keeping in mind the nature and purpose of the statute.  [Citation.]  If the statutory language is susceptible to more than one reasonable interpretation, then courts may consider extrinsic aids such as legislative history and public policy."  (*Brissette*, at p. 160; see *Walker*, at p. 1032.)  "[I]f the statutory language is clear, courts must follow the statute's plain meaning unless to do so would lead to an absurd result that the Legislature could not have intended."  (*Brissette*, at p. 160; see *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1369 ["'[i]f there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs'"]; *Serna*, at p. 570 ["[t]he plain meaning of the statute controls unless the statutory language is ambiguous"].)

### 2. *Nathaly Was Not a "Victim of the Crime" the Jury Convicted Pena of Committing*

Pena's conviction for misdemeanor sexual battery under section 243.4 required him to register as a sex offender under section 290, subdivision (c). (See § 290, subd. (c)(1) [a person convicted of a violation of section 243.4 must register].) Thus, the trial court had authority under section 136.2(i)(1) to consider issuing an order restraining Pena from contacting a victim of that crime. Pena argues that, because Nathaly was not "a victim of the crime" of misdemeanor sexual battery, the court did not have authority to issue a protective order restraining Pena from having contact with Nathaly. The People argue the court had authority to issue an order protecting Nathaly under section 136.2(i)(1) because substantial evidence supported the implied finding Nathaly was a "victim" of a qualifying crime committed by Pena. Pena's interpretation of section 136.2(i)(1) is the better one.

Before 2018, section 136.2(i)(1) provided: "In all cases in which a criminal defendant has been convicted of a crime involving domestic violence . . . or any crime that requires the defendant to register pursuant to subdivision (c) of Section 290, the court, at the time of sentencing, shall consider issuing an order restraining the defendant from any contact with *the victim*." (§ 136.2, former subd. (i)(1), italics added; see *Race*, *supra*, 18 Cal.App.5th at p. 216.) Effective January 1, 2018, the Legislature amended the statute to add the qualifier "of the crime" after "victim." (Stats. 2017, ch. 270, § 1.)

As the court in *Walts*, *supra*, 112 Cal.App.5th 127 observed, the Legislature's decision to use the definite article to identify the relevant crime is "significant." (*Id.* at p. 142.) "'[U]se of the

definite article "the" . . . refers to a specific person, place, or thing,'" whereas "'[u]se of the indefinite articles "a" or "an" signals a general reference.'" (*Ibid.*; see *Pineda v. Bank of America, N.A.* (2010) 50 Cal.4th 1389, 1396; see also *People v. Valencia* (2017) 3 Cal.5th 347, 361 [use of the definite article "'the'" to refer to "the petitioner" in Proposition 47, "instead of 'a' petitioner, is an indication" the provision of Proposition 47 in question "applies only to those individuals applying for relief under Proposition 47" and not under other statutes].) Thus, by amending section 136.2(i)(1), to refer to "a victim of *the* crime" (italics added), the Legislature made clear it intended to include among potentially protected persons only victims of "the crime" identified earlier in that sentence, namely, the "crime" that "a criminal defendant has been convicted of . . . ." (See *North American Title Co. v. Superior Court* (2024) 17 Cal.5th 155, 174-175 [a statute's use of the definite article referring to "the judge" indicates "the individual in question is the same judge referenced in the earlier provisions" of the statute]; *People v. Patterson* (2024) 99 Cal.App.5th 1215, 1225-1226 & fn. 3 [interpreting "'the . . . underlying felony'" in section 1172.6, subdivision (e), to "refer[ ] to the *specific* felony that *actually* underlied the defendant's murder conviction"]; see also *In re Brissette, supra*, 112 Cal.App.5th 147, 162-163 [interpreting "the court" in section 1172.2 to mean only the sentencing court may resolve a section 1172.2 petition].) The court in *Walts* explained: "The phrase 'of the crime' is preceded in the same sentence by a reference to a criminal defendant who 'has been convicted of' one or more of several specifically enumerated crimes. [Citation.] As such, the meaning of the phrase 'of the crime' is clear; it refers to one of the section 136.2(i)(1) enumerated crimes for which the

7

defendant has been convicted." (*Walts*, at p. 143; see *Valencia*, at p. 361 ["[i]f Proposition 47's definition of 'unreasonable risk of danger to public safety' was intended to apply to petitioners both under Proposition 36 and Proposition 47, then section 1170.18, subdivision (c), should have referred to 'a petitioner'" instead of "the petitioner"].)

Thus, the trial court had authority to issue a protective order under section 136.2(i)(1) to protect Evelin, who was "a victim of the crime" the jury convicted Pena of committing. But because Nathaly was not a victim of that crime, and the jury did not convict Pena of a qualifying crime involving Nathaly, the trial court did not have authority to issue a protective order under section 136.2(i)(1) protecting her.

The People argue the "term 'victim' under section 136.2 is not limited to only those individuals named in the charge for which the defendant was convicted." With that, we agree. As stated, under section 136, subdivision (3), a "victim" may include anyone "with respect to whom there is reason to believe that any crime . . . is being or has been perpetrated or attempted to be perpetrated." Thus, read in conjunction with section 136.2(i)(1), a "victim of the crime" may include a person not named in the count on which the defendant was convicted, so long as that person was a "victim" of the same crime. (Cf. *Walts*, *supra*, 112 Cal.App.5th at p. 144 [where "there [was] nothing in the record or the indictment to suggest that [two protected persons] were victims" of the charged offense, the court erred in concluding they were "victim[s] of the crime" under section 136.2(i)(1)].)

The People also argue, however, that "victim of the crime" includes anyone "harmed by" a defendant's conduct, even if the

defendant was not convicted of a crime for that conduct. That is where we part ways with the People. First, the People suggest the definition of the term "victim" in section 136, subdivision (3), overrides any qualification of that term in section 136.2(i)(1). Interpreting "victim of the crime" in section 136.2(i)(1) to ignore the words "of the crime" would violate the rule requiring courts to adopt a construction, if possible, that gives effect to ""'every word, phrase and sentence in pursuance of the legislative purpose.'"" (*People v. Reynoza* (2024) 15 Cal.5th 982, 991; accord, *People v. Valencia, supra*, 3 Cal.5th at p. 357; see *People v. Serna, supra*, 109 Cal.App.5th at pp. 569-570 ["[o]ur duty 'is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted'"].) Moreover, while the term "victim" appears in multiple subdivisions of section 136.2, the phrase "victim of the crime" appears only in subdivision (i)(1). That suggests the Legislature intended the phrase "victim of the crime" to have a distinct meaning from the term "victim." (See *Kleffman v. Vonage Holdings Corp.* (2010) 49 Cal.4th 334, 342 ["'[w]hen the Legislature uses materially different language in statutory provisions addressing the same subject or related subjects, the normal inference is that the Legislature intended a difference in meaning'"]; *People v. Smith* (2024) 100 Cal.App.5th 741, 760 [same].)

Second, the People rely on *Race, supra*, 18 Cal.App.5th 211, where the court held "section 136 defines a 'victim' in a broad enough manner in which to include a victim of a charged count of which defendant does not stand convicted so long as the court had some competent evidence before it with which to conclude there was reason to believe the individual was a victim of a

9

broadly defined domestic-violence-related offense involving harm or attempted harm such that a criminal protective order should be issued." (*Id.* at p. 216.) *Race*, however, was decided before the Legislature amended section 136.2(i)(1) to specify that "a victim" is only a victim "of the crime" the defendant was convicted of committing. (See *Walts*, *supra*, 112 Cal.App.5th at pp. 140-141 [distinguishing *Race* because it was decided before the 2018 amendments to section 136.2(i)(1)].) In light of that amendment, the trial court no longer has authority to impose a protective order restraining a defendant from contacting the victim of a crime alleged in a count on which the defendant was not convicted.

Finally, the People argue courts have interpreted the term "victim" in section 136.2(i)(1) broadly to include "family members of a named victim of a charged crime if those family members have themselves been physically or emotionally harmed by the crime." The People cite *People v. Beckemeyer* (2015) 238 Cal.App.4th 461, where the court held a "victim" of a crime for purposes of section 136.2(i)(1) included the victim's son whom the defendant attacked during the domestic violence incident that led to the charges, even though the son "was not in a statutorily defined domestic relationship with defendant." (*Beckemeyer*, at pp. 466-467.) *Beckemeyer* is distinguishable for several reasons. First, like *Race*, *Beckemeyer* was decided before the Legislature amended section 136.2(i)(1) in 2018; the court in *Beckemeyer* did not interpret the new language. Second, the defendant in *Beckemeyer* was convicted of a crime involving domestic violence where the defendant assaulted both his girlfriend and his girlfriend's son. Nathaly was not a victim of the same incident where Pena committed misdemeanor sexual

10

battery.  Finally, unlike the relationship between the two victims in *Beckemeyer*, Nathaly is not related to Evelin and was not present when Pena committed sexual battery against Evelin.

The People also cite *People v. Clayburg* (2012) 211 Cal.App.4th 86, which interpreted section 646.9, subdivision (k)(1), concerning protective orders for victims of stalking, to include as a "victim" both the named victim and the victim's child.  The language of section 646.9, subdivision (k)(1), is substantially similar to section 136.2, former subdivision (i)(1),[2] but the Legislature did not similarly amend it to narrow the scope of victims a court can protect with a criminal protective order.  *Clayburg* is also distinguishable because, as in *People v. Beckemeyer*, *supra*, 238 Cal.App.4th 461, the victim's child was present for, and suffered emotional harm from, the defendant's acts of stalking.  (*Clayburg*, at p. 90.)  Again, Nathaly was not present when Pena committed misdemeanor sexual battery on Evelin, and the People cite no evidence Nathaly suffered any emotional or other harm as a result of that crime.

B.      *The Trial Court Imposed an Unauthorized Sentence*

Pena argues his sentence of 364 days in jail is unauthorized because section 243.4, subdivision (e)(1), authorizes only jail sentences that do not exceed six months.  The People concede, and we agree, Pena's 12-month jail sentence is unauthorized. (See *People v. Scott* (1994) 9 Cal.4th 331, 354 ["legal error resulting in an unauthorized sentence commonly occurs where

---

[2]      Section 646.9, subdivision (k)(1), provides in relevant part: "The sentencing court also shall consider issuing an order restraining the defendant from any contact with the victim, that may be valid for up to 10 years, as determined by the court."

the court violates mandatory provisions governing the length of confinement"]; *People v. Gonzalez* (2025) 108 Cal.App.5th 741, 748 [same], review granted Apr. 30, 2025, S289974.)  The trial court must reduce Pena's sentence for misdemeanor sexual battery to six months.

## DISPOSITION

The conviction is affirmed.  The judgment is reversed, and the protective order is vacated.  The trial court is directed to resentence Pena to six months in county jail on his misdemeanor sexual battery conviction and to order him to register as a sex offender under section 290.

SEGAL, J.

We concur:

MARTINEZ, P. J.

FEUER, J.

12