Filed 5/26/22  P. v. Carrillo CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DONALD WAYNE CARRILLO,<br><br>        Defendant and Appellant. | A161904<br><br>(Napa County<br>Super. Ct. No. 19CR003531) |

Defendant Donald Wayne Carrillo pled no contest to two counts of forcible lewd acts upon four-year-old Jane Doe with substantial sexual conduct, and one count of oral copulation.  The trial court sentenced Carrillo to 22 years in prison and ordered a total of $231,554.96 in direct restitution: $31,554.96 for economic losses to Doe's parents; $150,000 in noneconomic losses to Doe; and $50,000 in noneconomic losses to Doe's parents.  The trial court also issued a 10-year criminal protective order that included both Doe and her parents.

On appeal, Carrillo challenges the restitution and protective order by arguing (1) Penal Code[1] section 1202.4 does not authorize noneconomic restitution to Doe's parents; (2) the noneconomic restitution to both Doe and

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

her parents was not supported by a rational basis; and (3) section 136.2 does not authorize the issuance of a criminal protective order as to Doe's parents. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Carrillo was charged by first amended felony complaint with three counts of oral copulation with a child under age 10 (§ 288.7, subd. (b)); two counts of forcible lewd acts (§ 288, subd. (b)(1)) with a special allegation of substantial sexual conduct (§ 1203.066, subd. (a)(8)); and one count of oral copulation of a person under age 14 (§ 287, subd. (c)(1)).

Pursuant to a plea agreement, Carrillo pled no contest to the two counts of forcible lewd acts, admitting the special allegation, as well as the count of oral copulation of a person under age 14. The remaining counts were dismissed subject to a waiver under *People v. Harvey* (1979) 25 Cal.3d 754 for sentencing and restitution. The plea bargain expressly contemplated victim restitution, waiver of appeal, and a "10-year Stay-Away/No Contact CLETS Order."

According to the probation department's presentence report, Carrillo was a childhood friend of Doe's father and had been babysitting Doe since she was four months old. When Doe was four years old, she reported that Carrillo would lick her private parts and bottom with his mouth and that it happened " 'a lot of times.' " Doe's mother stated that Doe was potty trained at that time but had regressed to having more accidents, and had two recent urinary tract infections. During a pretext telephone call between Doe's father and Carrillo recorded by police, Carrillo admitted to licking Doe three times over the past few months. Carrillo was arrested shortly thereafter.

Doe's parents submitted a request for $31,554.96 in restitution for economic losses. That amount included $20,000 in loss of income for Doe's father as an owner of two small businesses; $6,000 in lost wages for Doe's mother; $3,054.96 for a home security system; and $2,500 in wages paid to Carrillo for babysitting Doe.

At the sentencing hearing, Doe's mother read a prepared statement.[2] She stated that Doe, then five years old, was not yet capable of understanding the gravity of the sexual abuse committed against her but knew what Carrillo had done and that it was wrong. Carrillo had preyed on her family and betrayed the trust that she and her husband had bestowed upon him. She continued: "What we do know is you have inflicted unimaginable pain and suffering on our family and yours."

The prosecution sought direct restitution to Doe's parents for $31,544 in economic damages, plus $324 in restitution to the California Victim Compensation Board for a claim paid on mental health services provided to Doe's father. It also sought $150,000 in noneconomic damages to Doe and $50,000 in noneconomic damages to Doe's parents. The trial court sentenced Carrillo to 22 years in prison pursuant to the plea agreement. After considering the probation report and the parents' statements, the trial court ordered restitution to Doe and her parents in the amounts requested. It also issued a 10-year criminal protective order against Carrillo that included both Doe and her parents. This appeal followed.

---

[2] Due to an apparent misunderstanding that Doe's father would also be reading from a written statement, his comments at the hearing were not transcribed and thus are not in the record.

3

## II.

## DISCUSSION

### A.    *Section 1202.4 Noneconomic Restitution to Doe's Parents*

Carrillo argues that the $50,000 in noneconomic restitution awarded to Doe's parents should be reversed because it is not authorized by section 1202.4.  We review this restitution award de novo, as the issue before us is a question of statutory construction.  (*People v. Saint-Amans* (2005) 131 Cal.App.4th 1076, 1084.)  In answering this question, our primary task is to construe the statute " 'to ascertain the intent of the Legislature' " and " ' "to promote its purpose, render it reasonable, and avoid absurd consequences." ' "  (*Quintano v. Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1055.)

"The process of interpreting the statute to ascertain that intent may involve up to three steps."  (*MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1082 (*MacIsaac*).)  First, we look to the words of the statute themselves as "[t]he Legislature's chosen language is the most reliable indicator of its intent."  (*Ibid.*)  "If the statutory language is clear and unambiguous, our task is at an end, for there is no need for judicial construction."  (*Id.* at p. 1083.)  When the plain meaning of the statutory text does not resolve the question, we proceed to the second step and turn to maxims of construction and extrinsic aids, including the statute's legislative history.  (*Ibid.*)  If ambiguity remains, we "must cautiously take the third and final step" and "apply 'reason, practicality, and common sense to the language at hand.' "  (*Id.* at p. 1084.)  With these principles in mind, we turn to section 1202.4.

Section 1202.4, subdivision (a)(1) declares, "It is the intent of the Legislature that a victim of crime who incurs an economic loss as a result of

4

the commission of a crime shall receive restitution directly from a defendant convicted of that crime." Section 1202.4, subdivision (f) (section 1202.4(f)) provides, with certain exceptions not applicable here, that "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." Section 1202.4, subdivision (k) defines " 'victim' " for the purposes of the section. It includes a person who "has sustained economic loss as the result of a crime" and was the parent of the victim at the time of the crime. (§ 1202.4, subd. (k)(3)(A) (section 1202.4(k)(3)(A).)

Section 1202.4, subdivision (f)(3) requires, to the extent possible, that the restitution order constitute "a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct." Section 1202.4, subdivision (f)(3)(A)–(L) provides a nonexhaustive list of the losses to be included in that amount. It includes mental health counseling expenses, as well as lost wages or profits by parents while caring for an injured minor or assisting in the investigation or prosecution of the matter. (§ 1202.4, subds. (f)(3)(C)–(E).) For felony violations of section 288, 288.5, or 288.7, that amount also includes "[n]oneconomic losses, including, but not limited to, psychological harm." (*Id.*, subd. (f)(3)(F) (section 1202.4(f)(3)(F).)

Based on this plain language, we conclude that section 1202.4 authorizes the restitution award for noneconomic losses to Doe's parents. Doe's parents fall squarely within the definition of "victim" provided by section 1202.4(k)(3)(A): they sustained $31,554.96 in economic losses as the result of Carrillo's crime, including money paid to Carrillo for babysitting

5

Doe, as well as lost wages and profits. Carrillo ignores this critical fact. As for the noneconomic losses, Carrillo pled no contest to two felony counts of forcible lewd acts under section 288, subdivision (b)(1). Those violations trigger the provision of restitution for noneconomic losses under section 1202.4(f)(3)(F). Accordingly, Doe's parents were entitled to a restitution order that included *both* their economic and noneconomic losses.

Carrillo's arguments to the contrary do not alter our conclusion. He cites *People v. Runyan* (2012) 54 Cal.4th 849, 859, 864 for (1) its conclusion that section 1202.4 provides for recovery of losses "*personally incurred by that victim*," and (2) its reference to section 1202.4(f)'s restriction on restitution for "a victim's 'economic loss.'" First, the restitution awarded here is entirely consistent with the conclusion in *Runyan*, as Doe's parents personally incurred both economic and noneconomic losses as the result of Carrillo's crime. Second, *Runyan* correctly identified section 1202.4(f)'s general limitation to economic restitution. (*Runyan*, at p. 864.) Given that *Runyan* involved a conviction for gross vehicular manslaughter (*id*. at p. 854), however, it had no occasion to discuss section 1202.4(f)(3)(F)'s *exception* to this general limitation: the provision of noneconomic restitution for violations of specific child sexual-abuse statutes.

Carrillo also argues that a "plain language reading" of section 1202.4(f)(3)(F) compels the conclusion that noneconomic restitution is limited only to the child victim and *never* available to the child's parents. We are not persuaded. Despite Carrillo's suggestion to the contrary, section 1202.4(f)(3)(F) offers no alternative definition of "victim" for the recovery of noneconomic losses. Instead, it states only that a victim may recover noneconomic losses for violations of certain child sexual-abuse statutes. We thus interpret the statute in accordance with its definition of

6

" 'victim' " as specified in section 1202.4, subdivision (k) and, for the reasons described above, conclude that Doe's parents satisfy the definition. (*Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1063 ["If the Legislature has provided an express definition of a term, that definition ordinarily is binding on the courts."].)

Carrillo turns next to rules of statutory construction and legislative history to argue that noneconomic restitution under section 1202.4(f)(3)(F) was intended only for the child victim. Given our conclusion that the plain language of the statute is unambiguous and authorizes restitution for the noneconomic losses incurred by Doe's parents, we need not reach these arguments. (*MacIsaac*, *supra*, 134 Cal.App.4th at p. 1083.) Even if the language were read to be ambiguous, however, we would nonetheless reject each argument.

First, Carrillo points to the economic nature of the other categories of losses recoverable under section 1202.4(f) and argues that noneconomic losses were not meant to be included under this framework. What this argument overlooks, in our view, is that this list is explicitly nonexclusive and section 1202.4(f)(3)(F) has been widely recognized as an exception to the general limitation of restitution to economic losses. (§ 1202.4, subdivision (f)(3) [losses "including, but not limited to" the following categories]; e.g., *People v. Smith* (2011) 198 Cal.App.4th 415, 431 ["With one exception, restitution orders are limited to the victim's economic damages. The exception is for '[n]oneconomic losses, including, but not limited to, psychological harm, for felony violations of Section 288.' "].)

Second, Carrillo contends that an interpretation of the statute authorizing noneconomic losses to Doe's parents would render superfluous the express requirement of economic loss in section 1202.4, subdivision (k)(3)

(section 1202.4(k)(3)). Not so. Doe's parents sustained $31,554.96 in economic loss as a result of Carrillo's crime, and thus clearly satisfied the definition of " 'victim' " under section 1202.4(k)(3).

Third, Carrillo argues that section 1202.4(f)(3)(F) does not explicitly identify parents in its provision for noneconomic losses, unlike preceding subdivisions (D) and (E) that provide for lost wages or profits from either the victim or the minor's parent(s) or guardian(s). Again, section 1202.4(f)(3)(F) contains *no specific definition* regarding the victims who are eligible for noneconomic losses. Instead, the only definition is found in section 1202.4, subdivision (k), and nothing in the plain language of 1202.4(f)(3)(F) evidences an intent to preclude persons who satisfy that definition from recovery of noneconomic losses. (*Khajavi v. Feather River Anesthesia Medical Group* (2000) 84 Cal.App.4th 32, 51 ["Indeed, when the Legislature has made a deliberate choice by selecting broad and unambiguous statutory language, 'it is unimportant that the particular application may not have been contemplated.' "].) Our interpretation is also consistent with other principles of statutory construction applicable here: namely, "that restitution statutes should be interpreted broadly and liberally" and "that the term 'victim' has a broad and flexible meaning." (*People v. Saint-Amans*, *supra*, 131 Cal.App.4th at p. 1084.)

Fourth, Carrillo points to the legislative history of section 1202.4(k)(3) as evidence that the Legislature intended noneconomic losses to be recoverable only by the minor victim. According to Carrillo, this legislative history suggests that its definition of "victim" was replicated from the definition of "derivative victim" for the state's Victim Compensation Board: "an individual who sustains pecuniary loss as a result of injury or death to a victim." (Gov. Code, § 13951, subd. (c).) He argues that section 1202.4(k)(3)

8

thus includes a "threshold requirement" defining "victim" as someone who sustains economic loss. The provision of noneconomic restitution to Doe's parents here is entirely consistent with that interpretation because, as explained above, they suffered economic losses from Carrillo's crime.

Carrillo also cites to the text of the original amendment adding noneconomic restitution to section 1202.4, which stated: "If the conviction is for felony violation of Section 288, restitution may be ordered pursuant to subdivision (f) regardless of whether or not the defendant is denied probation and the court may order that the restitution be paid to the victim to cover noneconomic losses, including, but not limited to, psychological harm." (Stats. 1994, ch. 1106, § 3, p. 6550.) Again, nothing in this original language evidences an intent to limit recovery of noneconomic losses to only the minor victim, or preclude others who satisfy the definition of "victim" under section 1202.4(k)(3).

Finally, Carrillo asks us to reconsider our conclusion in *People v. Montiel* (2019) 35 Cal.App.5th 312, 321 that "parents of children who are sexually abused may be awarded restitution for noneconomic losses." In *Montiel*, the defendant was found guilty of sexual penetration and lewd or lascivious acts with a child. (*Id.* at p. 317.) The trial court ordered $50,000 in restitution to the minor child and $20,000 to her mother for the psychological harm they had experienced. (*Id.* at p. 318.) The relevant question before us in *Montiel* was whether the mother satisfied the definition of " 'victim' " under section 1202.4(k)(3) given her psychological harm. (*Montiel*, at p. 321.) Based on the plain language of section 1202.4(f)(3)(F) and its inclusion within the section 1202.4, subdivision (f)(3) statutory framework for economic losses, we determined that the mother satisfied the definition. (*Montiel*, at p. 321.) Our ultimate conclusion in *Montiel*, however, applies with even greater force

9

here because Doe's parents satisfied section 1202.4(k)(3)'s definition of " 'victim' " by sustaining $31,554.96 in economic losses as the result of Carrillo's crime.

In sum, we conclude that the trial court did not err in awarding noneconomic restitution to Doe's parents.

## B.    *Rational Basis for Noneconomic Restitution*

Even if section 1202.4 authorizes noneconomic restitution to both Doe and her parents, Carrillo argues that the awards should still be reversed because they were not supported by a rational basis.  Specifically, he contends that there was no indication of physical or psychological harm to Doe or her parents.

"In evaluating awards of restitution for *noneconomic* losses, courts have looked to civil law for guidance." (*People v. Lehman* (2016) 247 Cal.App.4th 795, 801 (*Lehman*).)  "The Civil Code provides noneconomic damages are for 'subjective, non-monetary losses including, but not limited to, pain, suffering, inconvenience, mental suffering, emotional distress, loss of society and companionship, loss of consortium, injury to reputation and humiliation.' " (*Ibid.*, quoting Civ. Code, § 1431.2, subd. (b)(2).)

We review a restitution order for abuse of discretion and it "will not be reversed unless it is arbitrary or capricious." (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542.)  "No abuse of discretion will be found where there is a rational and factual basis for the amount of restitution ordered." (*Ibid.*)  Importantly, section 1202.4 "does not require any particular kind of proof to establish a victim's losses." (*Lehman, supra*, 247 Cal.App.4th at p. 803.)  Courts have thus found no abuse of discretion where a restitution award is based on evidence from the probation presentence report and victim statements at the sentencing hearing.  (*Id.* at pp. 803–804.)

Here, Carrillo relies on *People v. Valenti* (2016) 243 Cal.App.4th 1140 and *Lehman* to support his position that there was no rational basis to support the restitution awards. Such reliance is misplaced. In *Valenti*, the trial court ordered $150,000 in total noneconomic restitution to three child victims after the defendant was found guilty of touching them with lewd intent. (*Valenti*, at pp. 1149–1150.) In the probation presentence report, the mother of the first victim stated that she " 'thanked God her son (victim) did not sustain actual child abuse' " and that her son "had not expressed his true feelings or discussed them with [her]." (*Id.* at p. 1182.) The mother of the second victim reported that he was " 'doing fine' " and she " 'believe[d] he has moved on from this.' " (*Id.* at pp. 1182–1183.) At the sentencing hearing, the mother of the third victim stated that her son was " 'excellent' " and that the defendant "had not succeeded in destroying him or their family." (*Id.* at p. 1183.) *Valenti* thus reversed the restitution order, concluding that the trial court "did not find facts, cite reliable evidence, or even explain how it arrived at the amount of restitution awarded to each victim." (*Ibid.*) Here, unlike *Valenti*, the trial court was explicit that it had considered the probation presentence report and statements by Doe's parents in reaching its restitution order. The report indicated that, during the period of abuse, Doe had had two urinary tract infections and increased episodes of incontinence. It also noted that Doe's father had received mental health services after the abuse was discovered. At the sentencing hearing, Doe's mother stated that Carrillo had "inflicted unimaginable pain and suffering on our family and yours." Although Doe was only five years old, she understood that the abuse was wrong. Doe's mother and father felt betrayed after welcoming Carrillo into their family and trusting him to care for their child. The probation

11

report and statements at the sentencing hearing evidenced both physical and psychological harm to Doe, as well as psychological harm to Doe's parents.

In *Lehman*, the trial court ordered $1 million in total noneconomic restitution to two child victims after the defendant was found guilty of committing dozens of sex crimes. (*Lehman, supra*, 247 Cal.App.4th at pp. 798–800.) The first victim was an adult when she testified at trial and made a statement at the sentencing hearing, describing the emotional pain she suffered because of the defendant and the impact on her life. (*Id.* at pp. 798, 802.) The second victim was 12 years old and "visibly distraught" when she testified at trial that the defendant's actions had " 'felt weird.' " (*Id.* at pp. 803, 798.) *Lehman* affirmed the restitution award. (*Id.* at p. 806.) It explained: "We agree that more evidence could have been provided concerning the victims' noneconomic losses. Nevertheless, we cannot conclude the trial court abused its discretion or that the noneconomic restitution awarded in this case shocks the conscience. . . . Here, the trial court's restitution award was evidently based on Jane Doe 1's and Jane Doe 2's testimony at trial, Jane Doe 1's statements at the sentencing hearing, and a probation report. This evidence constituted sufficient support for the restitution award, and there is no indication the trial court considered restitution awards from other cases in reaching its decision." (*Id.* at pp. 803–804.) So too here. As described above, the probation report and statements by Doe's parents provided a rational basis for the restitution ordered and the trial court was explicit that it considered this evidence in reaching the order.

In sum, we conclude that the trial court did not abuse its discretion in awarding noneconomic restitution to either Doe or her parents.

12

## C. *Section 136.2 Criminal Protective Order as to Doe's Parents*

Carrillo does not challenge the trial court's issuance of the criminal protective order as to Doe. Instead, he seeks to strike the inclusion of Doe's parents in the order by arguing that it is unauthorized by section 136.2. As the argument raises an issue of statutory construction, we review it de novo. (*People v. Race* (2017) 18 Cal.App.5th 211, 217 (*Race*).)

Before turning to the merits, we reject the Attorney General's preliminary response that (1) the claim is forfeited for failure to object below; and (2) the claim constitutes an improper challenge to the elements of Carrillo's plea agreement, which included waiver of appeal and issuance of a protective order. First, while an appellant generally waives issues on appeal that he or she did not raise in the trial court, "there are exceptions to this rule for unauthorized sentences and sentencing decisions that are in excess of the trial court's jurisdiction." (*People v. Ponce* (2009) 173 Cal.App.4th 378, 381.) Carrillo's claim that the trial court lacked authority to issue the protective order as to Doe's parents falls within such exceptions. (*Ibid.*) Second, nothing in the record shows the plea agreement contemplated the inclusion of Doe's parents in the protective order. Indeed, the protective order in place before Carrillo entered his plea included only Jane Doe. "[A] defendant's general waiver of the right to appeal, given as part of a negotiated plea agreement, will not be construed to bar the appeal of sentencing errors occurring subsequent to the plea," where the defendant is "attempting to appeal sentencing issues that were left *unresolved* by the particular plea agreements involved." (*People v. Panizzon* (1996) 13 Cal.4th 68, 86, fn. omitted.) Without any evidence that the plea agreement here specified the scope of the protective order, we cannot conclude that the claim is barred.

Turning to the merits, however, we are unpersuaded that the trial court lacked statutory authority to include Doe's parents in the protective order. Section 136.2, subdivision (i)(1) (section 136.2(i)(1)) provides, in relevant part, that when a criminal defendant has been convicted of a crime requiring him or her to register "pursuant to subdivision (c) of Section 290, the court, at the time of sentencing, shall consider issuing an order restraining the defendant from any contact with the victim of the crime." It declares: "It is the intent of the Legislature in enacting this subdivision that the duration of a restraining order issued by the court be based upon the seriousness of the facts before the court, the probability of future violations, and the safety of a victim and the victim's immediate family." (§ 136.2, subd. (i)(1).) Section 136 defines various terms as used in the chapter. It defines " 'Victim' " to mean "any natural person with respect to whom there is reason to believe that any crime as defined under the laws of this state or any other state or of the United States is being or has been perpetrated or attempted to be perpetrated." (§ 136, subd. (3).)

Several courts have addressed the question of whether a named victim's immediate family are "victims" within the meaning of section 136.2. In *People v. Delarosarauda* (2014) 227 Cal.App.4th 205 (*Delarosarauda*), for example, the defendant was convicted of corporal injury to a spouse or cohabitant, assault by means likely to produce great bodily injury, assault with a deadly weapon, and vandalism. (*Id.* at p. 208.) The trial court issued a criminal protective order as to the victim and her two children. (*Id.* at p. 209.) *Delarosarauda* concluded that the court lacked authority under section 136.2(i)(1) to issue the protective order as to the children. (*Delarosarauda*, at p. 212.) It reasoned: "On the record before the trial court, there was no reason to believe that any crime was being or had been

14

perpetrated or attempted to be perpetrated against [the children].
[Appellant's wife] testified that appellant 'never touched' the children, and no
evidence suggests that appellant ever attempted to harm them." (*Id.* at
p. 211.)

In *Race, supra,* 18 Cal.App.5th 211, the defendant pled no contest to
attempted lewd and lascivious acts on his minor niece. (*Id.* at pp. 213–215.)
The trial court issued a criminal protective order as to the defendant's niece
as well as his 12-year-old daughter. (*Id.* at pp. 213–214.) *Race* concluded
that the court had properly issued the protective order with respect to the
defendant's daughter. (*Id.* at p. 220.) Having surveyed cases interpreting
section 136.2(i)(1), including *Delarosarauda*, the *Race* court explained: "We
distill from the cases discussed *ante*, the rule that the term 'victim' pursuant
to section 136.2 criminal protective orders must be construed broadly to
include any individual against whom there is 'some evidence' from which the
court could find the defendant had committed or attempted to commit some
harm within the household." (*Race*, at p. 219.)

Like *Race*, the trial court here had a sufficient basis to conclude that
Carrillo had committed harm against Doe's parents. The probation report
and statements from Doe's parents evidenced their economic and
noneconomic harm. We thus conclude that the trial court did not err in
issuing the protective order as to Doe's parents.

## III.

## DISPOSITION

The judgment is affirmed.

EAST, J.*

I CONCUR:

MARGULIES, ACTING P. J.

A161904
*People v. Carrillo*

---

* Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16

# DISSENTING OPINION OF BANKE, J.

For the reasons stated in my dissent in *People v. Montiel* (2019) 35 Cal.App.5th 312, 327–361 (dis. opn. of Banke, J.), I remain of the view that in amending Penal Code section 1202.4, the Legislature intended that the *child* victims of specified child sex crimes recover restitution for their noneconomic losses, but that it did not otherwise depart from the long-established rule, applicable in all other contexts, that statutory restitution is limited to economic losses.

_____

Banke, J.