Filed 1/30/25  P. v. Bee CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B332306 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA152797) |
| v. | |
| DRAYON DESHAWN BEE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Teresa P. Magno, Judge.  Affirmed as modified and remanded with directions.

Verna Wefald, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield and Megan Moine, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Pursuant to a plea agreement, defendant Drayon Deshawn Bee pleaded nolo contendere to two counts of continuous sexual abuse of a child, in violation of Penal Code section 288.5, subdivision (a).[1] The trial court sentenced him to a term of 16 years in prison. At the sentencing hearing, the court issued a 10-year criminal protective order pursuant to section 136.2, subdivision (i)(1) that bars Bee from having any contact with the two victims, the victims' mother, and their sister. Bee did not object to the protective order.

On appeal, the parties dispute whether the victims' mother and their sister were properly included in the protective order. Although the sister was not named as a victim for the instant offenses, the trial court did not err in designating her as a protected party because there is evidence Bee perpetrated a crime against her. Specifically, one of the victims testified at the preliminary hearing that Bee molested her in the presence of the sister. Conversely, based on the current record, section 136.2, subdivision (i)(1) did not authorize the court to designate the victims' mother as a protected party because Bee did not

---

[1] Undesignated statutory citations are to the Penal Code. Section 288.5, subdivision (a) provides in pertinent part: "Any person who either resides in the same home with the minor child or has recurring access to the child, who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct with a child under the age of 14 years at the time of the commission of the offense, . . . or three or more acts of lewd or lascivious conduct . . . with a child under the age of 14 years at the time of the commission of the offense is guilty of the offense of continuous sexual abuse of a child and shall be punished by imprisonment in the state prison for a term of 6, 12, or 16 years." (§ 288.5, subd. (a).)

perpetrate, or attempt to perpetrate, a crime against her. The Attorney General represents, however, that had Bee timely objected to the protective order, the prosecution could have developed the record to provide a sufficient basis for the inclusion of the victims' mother in that order.

Consequently, we remand this matter to the trial court to afford the prosecution an opportunity to demonstrate that the mother should be designated as a protected party in the order. We also direct the court to amend the abstract of judgment to include a restitution order the court issued after it sentenced Bee. In all other respects, we affirm.

## BACKGROUND[2]

We summarize only those facts relevant to this appeal.

---

[2] We derive our Background in part from admissions made by the parties in their appellate briefing and assertions made by the Attorney General that Bee does not contest in his reply brief. (See *Williams v. Superior Court* (1964) 226 Cal.App.2d 666, 668, 674 (*Williams*) [" 'An express concession or assertion in a brief is frequently treated as an *admission* of a legal or factual point, controlling in the disposition of the case.' "]; *Artal v. Allen* (2003) 111 Cal.App.4th 273, 275, fn. 2 [" '[A] reviewing court may make use of statements [in briefs and argument] . . . as admissions against the party [advancing them].' "]; *Reygoza v. Superior Court* (1991) 230 Cal.App.3d 514, 519 & fn. 4 [criminal case in which the Court of Appeal assumed that an assertion made by respondent was correct because "defendant did not dispute respondent's claim in his reply"]; *Rudick v. State Bd. of Optometry* (2019) 41 Cal.App.5th 77, 89–90 [concluding that the appellants made an implicit concession by "failing to respond in their reply brief to the [respondent's] argument on th[at] point"].)

Daphne J. is the mother of C.J., N.F., and D.J. C.J., N.F., and D.J. are Bee's stepsiblings.

In 2010, Bee was convicted of continuously sexually abusing C.J., in violation of section 288.5, subdivision (a). Bee admits he was sentenced to a 16-year prison term for that offense.

In 2019, N.F. and D.J. reported that Bee had sexually abused them as well.

On October 14, 2021, the People filed an amended information charging Bee with one count of sexual intercourse or sodomy with a child 10 years old or younger, in violation of section 288.7, subdivision (a) (count 1); two counts of oral copulation or sexual penetration with a child 10 years old or younger, in violation of section 288.7, subdivision (b) (counts 2 and 3); three counts of lewd act upon a child, in violation of section 288, subdivision (a) (counts 4, 5, and 6); and one count of continuous sexual abuse of a child, in violation of section 288.5, subdivision (a) (count 7). The People alleged Bee committed each offense "[o]n or between February 1, 2010 and August 26, 2010 . . . ." The People averred that Bee committed counts 1, 2, 3, 4, 5, and 6 against N.F., and that he perpetrated count 7 against D.J.

Although our record is limited in certain respects because the case did not proceed to trial, we note the parties do not dispute that: (1) N.F. was six to seven years old when Bee began to abuse her; (2) D.J. was 11 to 12 years old when Bee began to abuse him; and (3) C.J. was nine years old at the time Bee was arrested for abusing her.

At a May 23, 2023 hearing, Bee informed the trial court that he accepted a plea offer in exchange for a 16-year prison

4

term.  The trial court granted the prosecutor's motion to amend the amended information to allege as count 8 that Bee continuously sexually abused N.F. in violation of section 288.5, subdivision (a).[3]  Pursuant to Bee's plea agreement, he pleaded nolo contendere to counts 7 and 8.  The court found Bee guilty of those two offenses and granted the prosecutor's motion to dismiss all remaining counts.

On June 8, 2023, pursuant to the plea agreement, the trial court sentenced Bee to the high term of 16 years in prison on count 7 and a concurrent 16-year prison term on count 8.  The trial court also issued a criminal protective order pursuant to section 136.2, subdivision (i)(1) barring Bee from, inter alia, having any contact with N.F., D.J., C.J., and their mother, Daphne J.

Bee timely appealed the judgment on July 17, 2023.

On November 7, 2023, the administrative presiding justice for our district issued the following order:  "This appeal, initiated by the notice filed on July 17, 2023, is limited to issues that do not require a Certificate of Probable Cause."[4]

---

[3] In moving to amend the amended information, the prosecutor did not identify the dates on which Bee perpetrated count 8.  The amended abstract of judgment filed on March 28, 2024 indicates that Bee committed this offense in 2010.

[4] In his notice of appeal, Bee checked a box indicating "[t]his appeal is based on the sentence or other matters occurring after the plea that do not affect the validity of the plea."  (See also Cal. Rules of Court, rule 8.304(b)(2)(B) ["No certificate of probable cause is required for an appeal based on or from:  [¶] . . . The sentence or other matters occurring after the plea . . . that do not affect the validity of the plea . . . ."].)

We later appointed counsel to represent Bee on appeal. Bee's appointed counsel filed an opening brief in which she raised no issues, requested that this court independently review the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436, and represented that counsel remained available to brief any additional issues upon this court's request.

We independently reviewed the record and asked the parties to brief the following two issues:

1. Did the trial court err in issuing a criminal protective order protecting C.J. and Daphne J., instead of limiting the scope of the order to the named victims for counts 7 and 8, to wit, D.J. and N.F.?

2. Should we direct the trial court to amend the abstract of judgment to reflect the victim restitution order in the stipulated amount of $14,851 made on December 7, 2023?[5]

The parties submitted supplemental briefing on these questions.

## APPLICABLE LAW AND STANDARDS OF REVIEW

On the date Bee was sentenced, section 136.2, subdivision (i)(1) provided in pertinent part: "When a criminal defendant has been convicted of a crime . . . that requires the defendant to register pursuant to subdivision (c) of Section 290, the court, at the time of sentencing, shall consider issuing an order restraining the defendant from any contact with a victim of

---

[5] In our order requesting supplemental briefing, we took judicial notice of the minute order for the December 7, 2023 restitution hearing and the amended abstract of judgment that was filed on March 28, 2024.

6

the crime.  The order may be valid for up to 10 years, as determined by the court. . . .  It is the intent of the Legislature in enacting this subdivision that the duration of a restraining order issued by the court be based upon the seriousness of the facts before the court, the probability of future violations, and the safety of a victim and the victim's immediate family."[6] (Stats. 2022, ch. 87, § 1.)

"As used in the chapter containing section 136.2, subdivision (i)(1), ' "[v]ictim" means any natural person with respect to whom there is reason to believe that any crime as defined under the laws of this state . . . is being or has been perpetrated or attempted to be perpetrated.' [Citation.]" (*People v. Delarosarauda* (2014) 227 Cal.App.4th 205, 211 (*Delarosarauda*), quoting § 136, subd. (3).)  Furthermore, Bee's convictions for violating section 288.5 require him to register under section 290, subdivision (c).  (See § 290, subd. (c)(1).)

Issues of statutory interpretation are " ' "questions of law subject to our independent or de novo review.  [Citations.]  'The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law.  [Citations.]  In order to determine this intent, we begin by

---

[6] Section 136.2, subdivision (i)(1) has since been amended such that the last sentence of the provision now reads:  "It is the intent of the Legislature in enacting this subdivision that the duration of a restraining order issued by the court be based upon the seriousness of the facts before the court, the probability of future violations, the safety of a victim and the victim's immediate family, *and any information provided to the court pursuant to Section 273.75.*"  (Stats. 2024, ch. 538, § 1, italics added.)  This legislative amendment has no impact on our analysis.

examining the language of the statute.  [Citations.]  But "[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend."  [Citations.] . . . [W]e do not construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." ' [Citation.]"  [Citation.]' [Citations.]"  (See *People v. Race* (2017) 18 Cal.App.5th 211, 217 (*Race*).)

"With respect to the issuance of a legally authorized criminal protective order, ' " 'We imply all findings necessary to support the judgment, and our review is limited to whether there is substantial evidence in the record to support these implied findings.' " [Citation.]' [Citation.]"  (*Race, supra*, 18 Cal.App.5th at p. 217.)  Under the substantial evidence standard, "[w]e 'view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence.' [Citation.]"  (See *San Diego Police Dept. v. Geoffrey S.* (2022) 86 Cal.App.5th 550, 575–576.)  "[I]n determining whether to issue a criminal protective order pursuant to section 136.2, a court may consider all competent evidence before it."  (*Race, supra*, at p. 220.)

Regardless of the applicable standard of review, however, "the judgment [or order] challenged on appeal is presumed correct, and it is the appellant's burden to affirmatively demonstrate error."  (See *People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573; see also *Golden Door Properties,*

*LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 554–555 [" 'Even when our review on appeal "is de novo, it is limited to issues which have been adequately raised and supported in [the appellant's opening] brief . . . ." ' [Citation.]" . . . " 'It is the appellant who bears the burden of overcoming th[e] presumption [that an appealed judgment or order is correct].' "].)  To overcome the presumption of correctness, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record.  (See *People v. Stanley* (1995) 10 Cal.4th 764, 793 [" '[E]very brief should contain a legal argument with citation of authorities on the points made.  If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.' "]; *People v. Flint* (2018) 22 Cal.App.5th 983, 1006, fn. 17 [noting that an appellate court may " 'decline to consider any factual assertion unsupported by record citation at the point where it is asserted[,]' " and that " '[a]n appellate court "will not develop the appellants' arguments for them" ' "].)

## DISCUSSION

Although the trial court did not err in designating C.J. as a protected party in the restraining order, the record does not support Daphne J.'s inclusion in the order.  Additionally, the parties agree the abstract of judgment should be amended to reflect the victim restitution order in the stipulated amount of $14,851.

As a preliminary matter, we note the Attorney General claims Bee forfeited any challenge to the protective order by failing to raise any objection to it during the trial court

9

proceedings.[7]  Bee argues we should exercise our discretion to determine whether C.J. and Daphne J. were properly included in the protective order to "forestall a potential claim of ineffective assistance of counsel."  We agree with Bee.  (See *Race*, *supra*, 18 Cal.App.5th at p. 219, fn. 4 [addressing a forfeited appellate challenge to a protective order to "forestall [the] defendant's ineffective assistance of counsel claim"].)

The Attorney General, however, also argues that if Bee had timely objected to the protective order, "[t]he prosecution could have developed a record and provided a basis with specific evidence as to why Daphne J. . . . w[as] properly included" in the protective order.  To ensure the prosecution is not prejudiced by our excusal of Bee's forfeiture, we direct the trial court upon remand to allow the prosecution to offer evidence regarding whether Daphne J. may be included in the protective order.  (See § 1260 [providing that a reviewing court has the discretion to "remand the cause to the trial court for such further proceedings as may be just under the circumstances"].)

## A.  The Trial Court Did Not Err In Including C.J. in the Protective Order

As for C.J.'s inclusion in the protective order, Bee maintains, "[A]lthough [C.J.] was a previous victim of [Bee], the protective order prohibiting him from having contact with her

---

[7] The Attorney General further asserts that Bee "forfeited any claim regarding the protective order because . . . he expressly agreed to the protective order."  Assuming arguendo the Attorney General is correct, we exercise our discretion to excuse Bee's forfeiture of his challenge to that order for the reasons stated in the textual paragraph accompanying this footnote.

10

is . . . invalid.  This is because section [136.2,] subdivision (i)(1) provides for the imposition of the protective order 'at the time of sentencing[,]' " and Bee had been sentenced in a prior proceeding to 16 years in prison for continuously sexually abusing C.J.  Bee thus seems to argue that although the court that sentenced him to 16 years in prison for his previous conviction for continuous sexual abuse of C.J. could have issued a restraining order protecting her from Bee, that prior misconduct cannot be the basis for including C.J. in the instant protective order.

We need not decide whether Bee's prior conviction for continuously sexually abusing C.J. supports her designation as a protected party in the restraining order.  As the Attorney General points out, N.F. testified at the preliminary hearing that on at least one occasion, C.J. saw Bee force N.F. to copulate orally with him.  The Attorney General correctly observes that by sexually abusing N.F. in C.J.'s presence, Bee violated section 273g.  That statute provides:  "Any person who in the presence of any child indulges in any degrading, lewd, immoral or vicious habits or practices, or who is habitually drunk in the presence of any child in his care, custody or control, is guilty of a misdemeanor."  (§ 273g.)[8]  It is undisputed that C.J. and N.F. were minors when this incident occurred.

Admittedly, Bee did not suffer a conviction for violating section 273g, and a violation of that statute does not give rise to a

---

[8]  In *People v. Perreault* (1960) 182 Cal.App.2d Supp. 843, the Appellate Department of the Los Angeles County Superior Court found that the phrase "habitually drunk" in section 273g is unconstitutionally "vague, uncertain and ambiguous."  (See *Perreault*, *supra*, 182 Cal.App.2d Supp. at p. 843.)  That portion of the statute is not relevant here.

duty to register under section 290, subdivision (c). (See § 290, subd. (c) [omitting § 273g from the list of registerable offenses].) These facts are immaterial. " '[F]or purposes of a section 136.2 protective order, "victim" is broadly defined in section 136 as *any* person against whom there is reason to believe *a* crime has been committed.' [Citation.]" (*Race, supra*, 18 Cal.App.5th at pp. 217–218, italics added.) Accordingly, "the subject of a protective order pursuant to section 136.2, subdivision (i)(1) need not be a named victim of one of the offenses for which the defendant st[ands] convicted; rather, such a protective order could issue with respect to someone against whom some evidence suggest[s] the individual ha[s] been 'targeted or harmed' by the defendant." (See *Race, supra*, at p. 219.) N.F.'s preliminary hearing testimony, which shows Bee violated section 273g by forcing N.F. to copulate orally with him in C.J.'s presence, satisfies that standard.

In sum, the trial court did not err in designating C.J. as a protected party because the record contains substantial evidence that C.J. was a "victim" under section 136.2, subdivision (i)(1).

## B.    We Conclude That on the Record Before Us, The Trial Court Lacked Authority To Designate Daphne J. as a Protected Party

Bee argues that Daphne J. should not have been included in the protective order "because the record does not show that [Bee] committed or attempt[ed] to commit a *crime* against Daphne J."

The Attorney General does not contend Bee committed or attempted to commit a crime against Daphne J. Rather, the Attorney General maintains, "The named victims' mother, Daphne J., suffered emotional harm as a result of [Bee's]

12

continuous sexual abuse of her three minor children, and was therefore also properly included in the protective order." To support this position, the Attorney General cites *People v. Clayburg* (2012) 211 Cal.App.4th 86 for the proposition that " 'a person who suffered emotionally and who was traumatized by [the defendant's] conduct' " may be designated a protected party. (Citing *Clayburg*, *supra*, at pp. 91–92.) The Attorney General also cites the Court of Appeal's decision in *Race* to support the proposition that, by virtue of Daphne J.'s emotional trauma, she constitutes "a person harmed in the household" who may be included in a protective order. (Citing *Race*, *supra*, 18 Cal.App.5th at p. 219.)

For the reasons set forth below, we agree with Bee that the record before us does not show that Daphne J. was a "victim" for the purpose of section 136.2, subdivision (i)(1).

In *Clayburg*, the defendant was convicted of two counts of stalking in violation of section 646.9, subdivision (a). (*Clayburg*, *supra*, 211 Cal.App.4th at pp. 88–89.) "The named victim of one of the stalking counts was . . . [the defendant's] former husband and the father of their [minor] daughter," and the other victim was defendant's former supervisor at work. (See *id.* at pp. 88–89 & fn. 2.) The record contained evidence showing that the daughter, who resided with the defendant's former husband, "suffered emotionally and . . . was traumatized by" the defendant's harassment of her former husband. (See *id.* at pp. 89–91.) For instance, on one occasion when the defendant "pounded a golf club on [her former husband's] front porch[ ] and demanded custody of [the] daughter, . . . [the d]aughter 'saw her mom and ran to her room, crying.' " (See *id.* at p. 89.)

13

At sentencing, the trial court issued a protective order pursuant to section 646.9, subdivision (k)(1) barring the defendant from having any contact with her daughter for 10 years. (*Clayburg*, *supra*, 211 Cal.App.4th at pp. 88–89.) At that time, subdivision (k)(1) provided in pertinent part: " 'The . . . court . . . shall consider issuing an order restraining the defendant from any contact with the victim, that may be valid for up to 10 years, as determined by the court. [(First sentence.)] It is the intent of the Legislature that the length of any restraining order be based upon the seriousness of the facts before the court, the probability of future violations, and the safety of the victim and his or her immediate family. [(Second sentence.)]' " (*Clayburg*, *supra*, at pp. 88–89.)

On appeal, a majority of a panel in Division Six rejected the defendant's contention that "the order was unauthorized because [the] daughter was not a named victim of the stalking." (See *Clayburg*, *supra*, 211 Cal.App.4th at pp. 86, 88–89, 94 (maj. opn. of Yegan, J.).) The court "read the two sentences [of section 646.9, subdivision (k)(1)] together" and held that "a member of the immediate family of a stalking victim [citation] who suffers emotional harm . . . is a 'victim' for purposes of a postconviction restraining order." (See *Clayburg*, at pp. 88–89, 91.) *Clayburg* found that "constru[ing] the second sentence so as to relate only to the length of the restraining order" would "defeat Legislative intent and defeat justice." (See *id.* at p. 91.)

*Clayburg* is not instructive.

First, whereas the term "victim" for purposes of section 136.2, subdivision (i)(1) is defined in section 136, subdivision (3) (see *Race*, *supra*, 18 Cal.App.5th at pp. 216–217), the *Clayburg* court did not identify a provision defining the term

14

"victim" for purposes of section 646.9, subdivision (k)(1); in fact, the *Clayburg* majority suggested no such statutory definition exists. (See *Clayburg*, *supra*, 211 Cal.App.4th at p. 88 [noting "[t]here are situations when the electorate or the Legislature will supply a definition for the subject provision or statute and there are times when no specific definition is provided," and intimating the *Clayburg* matter involved "the latter instance"].) Section 136, subdivision (3) in turn defines "victim" as a "person with respect to whom there is reason to believe that any crime . . . is being or has been perpetrated or attempted to be perpetrated"; it does not define the term to include someone who suffered emotional harm as a result of a crime committed against another person. (See § 136, subd. (3).)

Second, Division Four persuasively explained in *Delarosarauda* that the *Clayburg* majority's interpretation of section 646.9, subdivision (k)(1) was erroneous: "We read the second sentence [of the statute] to mean what it says: the court should consider, among other factors, the 'safety of the victim and his or her immediate family' in determining the length of the restraining order authorized in the first sentence. Nothing suggests the second sentence also modifies the scope of the restraining order." (See *Delarosarauda*, *supra*, 227 Cal.App.4th at pp. 205, 211–212.) The *Delarosarauda* court further remarked, "As noted by Justice Perren in the *Clayburg* dissent, if the term 'victim' in the first sentence included a child of the family, the second sentence would have no need to refer to ' "the victim and his or her immediate family." ' [Citation.]" (*Delarosarauda*, *supra*, at p. 212, citing *Clayburg*, *supra*, 211 Cal.App.4th at pp. 94–95 (dis. opn. of Perren, J.); see also *Association for Los Angeles Deputy Sheriffs v. County of*

15

*Los Angeles* (2023) 94 Cal.App.5th 764, 783 [" ' "[S]tatutes must be interpreted, if possible, to give each word some operative effect[,]" [citation]' meaning that we should not ' "construe statutory provisions so as to render them superfluous." ' "].)

In sum, *Clayburg* is inapposite because Division Six construed a different statute that does not utilize section 136, subdivision (3)'s definition of "victim," and we agree with the *Delarosarauda* court's determination that the *Clayburg* majority misinterpreted the legislation at issue in that case.

The Attorney General's reliance on *Race* fares no better. We acknowledge that at one point, the *Race* court remarked: "[T]he term 'victim' pursuant to section 136.2 criminal protective orders must be construed broadly to include any individual against whom there is 'some evidence' from which the court could find the defendant had committed or attempted to commit some harm within the household." (*Race, supra*, 18 Cal.App.5th at p. 219.)

Yet, *Race* recognized section 136.2, subdivision (i)(1) employs section 136, subdivision (3)'s definition of "victim." (See *Race, supra*, 18 Cal.App.5th at pp. 216–218.) *Race* held that statutory definition is "broad enough . . . to include a victim of a charged count of which defendant does not stand convicted . . . ." (See *id.* at p. 216.) Specifically, the Court of Appeal held that upon the defendant's plea of no contest to attempted lewd and lascivious acts for which the defendant's niece was the named victim, section 136.2, subdivision (i)(1) authorized the trial court to issue an order protecting the defendant's niece *and* his daughter, given there was evidence the defendant had sexually assaulted his daughter. (See *Race*, at pp. 213, 219–220.) Accordingly, it is apparent that the *Race* court's use of the phrase

16

"some harm" was merely a shorthand for section 136, subdivision (3)'s expansive definition of "victim," and not a holding that individuals who do not meet that definition may also be designated as protected parties. (See *In re H.E.* (2008) 169 Cal.App.4th 710, 721 [" 'Language used in any opinion is of course to be understood in the light of the facts and the issue then before the court, and an opinion is not authority for a proposition not therein considered.' "].)

We thus reject the Attorney General's argument that on this record, section 136.2, subdivision (i)(1) authorizes Daphne J.'s inclusion in the protective order. On remand, the prosecution shall be afforded an opportunity to show Daphne J. constitutes a "victim" who may be designated a protected party pursuant to that statute.

## C. We Direct the Trial Court To Amend the Abstract of Judgment To Reflect the Restitution Order

The parties agree, as do we, that the abstract of judgment should be amended to reflect the victim restitution order in the stipulated amount of $14,851. We thus direct the trial court, upon remand, to amend the abstract of judgment accordingly. (See *Williams*, *supra*, 226 Cal.App.2d at p. 674 [holding that a reviewing court may rely upon the parties' concessions].)

17

## DISPOSITION

We remand the matter to the trial court with directions to (1) afford the People an opportunity to demonstrate that Daphne J. was properly included in the criminal protective order, (2) amend the abstract of judgment to reflect the victim restitution order in the stipulated amount of $14,851, and (3) conduct further proceedings consistent with this opinion.  As modified, the judgment is affirmed.

NOT TO BE PUBLISHED.


BENDIX, J.


We concur:



ROTHSCHILD, P. J.



WEINGART, J.