Filed 3/7/25  P. v. Brissette CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>THOMAS FLOYD BRISSETTE,<br><br>    Defendant and Appellant. | F088468<br><br>(Super. Ct. No. SC072218A)<br><br>**OPINION** |

-ooOoo-

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  David Wolf, Judge.

Brad J. Poore, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Julie A. Hokans and Dina Petrushenko, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Franson, Acting P. J., Smith, J. and DeSantos, J.

Defendant and appellant Thomas Floyd Brissette (Brissette) is 67 years old and serving an eight-year sentence for possession of a controlled substance by an inmate. Brissette has stage IV liver cancer. As a result of his cancer, the Department of Corrections and Rehabilitation (CDCR) sent the presiding judge of the Kern County Superior Court notice that Brissette met the criteria for recall of sentence/compassionate release under Penal Code section 1172.2, subdivision (b)(1).[1] The trial court denied compassionate release. On appeal, Brissette argues the court erred by: (1) applying the wrong standard of review when it denied release; (2) concluding the evidence of his physical condition was sufficient to preclude relief under section 1172.2; and (3) concluding there was sufficient evidence that he would pose an unreasonable risk of danger if released. We affirm.

## EXPANDED PROCEDURAL BACKGROUND

In July 1976, Brissette pled guilty in the Los Angeles County Superior Court to a violation of former section 12031, subdivision (a) (carrying a loaded firearm).

In April 1980, Brissette was convicted in the Los Angeles County Superior Court of a violation of section 220 (assault with the intent to commit rape).

In August 1985, Brissette was convicted in the Los Angeles County Superior Court of a violation of section 187 (second degree murder) and sentenced to 15 years to life plus seven years.

In April 1998, while still incarcerated for the 1985 murder conviction, Brissette pled guilty in the Kern County Superior Court to a violation of section 4573.6 (possession of a controlled substance by an inmate) and was sentenced to eight years, consecutive to the 1985 sentence for murder.

In July 2024, the CDCR notified the Kern County Superior Court that Brissette met the clinical criteria for release under section 1172.2, subdivision (b).

---

[1] All further statutory references are to the Penal Code.

In August 2024, after a contested hearing, the trial court denied a recall of sentence/compassionate release under section 1172.2.[2]

## GENERAL BACKGROUND

*1976 Conviction for Violation of Former Section 12031*

In July 1976, Brissette believed that the victim had broken into his (Brissette's) car and stolen stereo tapes. Brissette argued with the victim. Brissette later returned to the victim's house where he honked his horn. When the victim looked out his window, he observed Brissette point and fire a shotgun at his house. The victim got a rifle and fired back. Later that night, Brissette returned to the victim's house and fired additional shotgun shots into the house and the victim's car.

*1980 Conviction for Violation of Section 220*

In July 1979, Brissette's 14-year-old sister-in-law (the sister of Brissette's wife) was sleeping in Brissette's home. The sister-in-law was awakened by Brissette as he was choking her. Brissette was naked and had an erect penis. The sister-in-law began screaming. Brissette told her to stop screaming because he was going to do what he wanted anyway. Brissette's wife asked him to leave her sister alone, but Brissette refused.

*1985 Conviction for Violation of Section 187*

In September 1984, Brissette went to the residence of his girlfriend J.H. and said that he had to talk to her. At the residence, he slapped her in the face. Later, J.H. went to visit Q.A. On her way, she observed Brissette standing with his brother-in-law. J.H. went inside Q.A.'s residence. J.H. and Q.A. later went outside and, as they were going down the stairs, J.H. observed Brissette. J.H. started going back up the stairs, and

---

**2**      The Los Angeles County Superior Court granted a section 1172.2 petition and recalled Brissette's life sentence for the 1985 murder conviction. This appeal concerns only Brissette's section 1172.2 petition with respect to the 1998 drug conviction in Kern County.

Brissette ordered her to come down.  Q.A. intervened and told Brissette to leave the residence, but Brissette demanded to speak with J.H.  Brissette and Q.A. began arguing and yelling at each other.  Brissette then pulled out a pistol and shot Q.A., who died from the gunshot wound.

*1998 Conviction for Violation of Section 4573.6*

In March 1997, Brissette was incarcerated.  A confidential informant told a corrections officer that Brissette was in the main exercise yard and trying to sell heroin.  An officer approached Brissette and conducted a search.  The officer looked inside Brissett's mouth and saw cellophane under his tongue.  After pretending to swallow the cellophane, Brissette spit the cellophane out.  The cellophane contained two bindles.  Lab tests revealed that the bindles contained methamphetamine.

*CDCR Section 1172.2 Notification*

On July 15, 2024, the Kern County Superior Court received notification from CDCR Director of Health Care Services Dr. Joseph Bick that Brissette met "the clinical criteria for recall of the current prison commitment and sentence."  The notice stated that documents from May 9, 2024, demonstrated that Brissette was 66 years old and had been diagnosed with lymphoma (for which he received chemotherapy), cirrhosis of the liver complicated by esophageal varices, and liver cancer.  The liver cancer was diagnosed in 2021 but had recently spread beyond the liver.  Although Brissette was receiving treatment, the treatment would not be curative.  The notice explained that Brissette was ambulatory with the use of a cane and was able to feed, bathe, and dress himself.  However, "[d]ue to his advanced liver disease and liver cancer, physicians have determined him to have an end-of-life trajectory and 12 months or less to live."  The notice included a diagnostic study report (the Study).  The Study included a discussion of Brissette's health, criminal history, prison disciplinary history, and other relevant considerations for assessing whether to recall his sentence.  The Study also noted that if released, Brissette would live at an independent living facility operated by his sister.

*Trial Court's Ruling*

In denying a sentence recall, the trial court explained:

"All right. I did read the 84 page diagnostic study submitted by [the] CDC[R] pursuant to [section] 1172.2. On page 6, it notes, 'Here it is undisputed that … Brissette has a serious criminal record including a conviction for rape in 1979, a murder in 1984. He's currently 68 years old. And these serious offenses have occurred 45 and 40 years ago when he was 21 and 26 years old. Since the murder offense in 1984, he has sustained one conviction for possession of drugs in prison.' And then it is says clearly '… Brissette does not presently possess an unreasonable risk that he will commit a new super strike.' And that's pursuant to [the] CDCR's note. They summarize his job assignments including [p]orter, medical assistance, maintenance mechanic, teacher's aide, barber[,] laundry, clerk, kitchen worker, electrical, PC repair, outside work crew, and RASP [(a recycling and salvage program)]. He's currently in a medium single cell and a work group, privilege group presently unassigned. They reviewed his 115's and 128's which are lengthy.[3] Some of which [were] as recently as 2022 and 2023. Looking in the medical section, which is repeated more than once including a second time on page 21, he was originally treated and had a complete response to that treatment. On page 13, the medical opinion is he has between months and years to live. He's in current[ly] a stable condition and responding to treatment. On page 16, Dr. Chakrabarty … quotes Dr. Burgoyne … and notes again that [Brissette's prognosis] is months to years. They note that his cancer is responsive to treatment. They noticed his weight is stable. They said that [Brissette] reports a loss of appetite. However, his weight is stable. They note that [Brissette] does not have any difficulty ambulating. They also note that he has [a] history of affiliation with organized criminal activity. They note that his prior criminal history includes a [section] 290 offense. On page 17 of the report, they note that again his prognosis includes months to years. He's currently stable, and the cancer is responding to treatment. They note that he doesn't have any difficulty ambulating. He can take care of himself and takes care of his own hygiene, bathing, et cetera. They note that he committed criminal acts which indicate that he is a danger to the public if released. That is on page 17. They note that [Brissette's] documented institutional behavior

---

**3** A CDCR form 115 documents misconduct that is believed to be a violation of law or is not minor in nature. A CDCR form 128 documents incidents of minor misconduct. Cal. Code Regs., tit. 15, § 3312, subd. (a)(2), (3).)

does reflect a history of offense[s] involving force, violence, assault[,] and predatory sexual behavior.  They also note that he does have the capacity to influence others and commit acts that endanger public safety.  They note he does ambulate.  He can feed, dress, [and] bathe himself.  He doesn't have any problems going to the bathroom.  He's not on oxygen.  Looking at his criminal history that was attached.  In 1976, he was arguing with a victim.  [Brissette] went outside.  The victim looked out of his residence, and [Brissette] pointed a shotgun at him and fired it.  …  Then in [19]79, the victim was a 14-year-old sister of [Brissette's] wife.  She was awakened because he was choking her.  He was naked, and she began screaming.  He told her to shut up because he was going to do what he wanted to do anyway.  [Brissette's] wife came in and asked him to leave the victim alone, and he still refused.  He was convicted of rape of a 14-year-old, which is why he's a [section] 290 registrant.  Later that same year, he's got another assault and brandishing involving a knife.  And then when he's convicted of the murder, the evaluation indicates that he's an extremely dangerous individual.  His record, and …  quoting from the memo filed by [the] CDCR.  The quote is and the evaluation, 'Once again [Brissette] has clearly established the fact that he's an extremely dangerous individual.  His record is replete with incidents of assault types of behavior including the sexual molestation of a 14-year-old girl.  It was for this reason that he was sentenced to [s]tate [p]rison a little more than four years ago.  Now within a matter of months after his release on parole, he's been accused of a cold-blooded murder of another human being.  Circumstances in aggravation were the crime involved great violence, great bodily harm, threat of great bodily harm, and acts disclosing a high degree of cruelty, viciousness, [and] callousness.'  They note [Brissette] was armed with a gun.  That he has engaged in a pattern of violent conduct which indicates he's a serious danger to society.  His prior convictions of adult were previously an adjudications were of increasingly seriousness.  [*Sic.*]  He's been in prison before.  He was on parole when he committed the murder, and his prior performance on parole and probation were unsatisfactory.  With regards to the factors listed in mitigation, the Court found that there were none.  And his most recent [p]arole [b]oard hearing, the [p]arole [b]oard instructed him to receive no more 115's or 128's.  They denied him for an additional five years.  …  His current release plan is to go into an independent living residence that his [sister] operates, and she indicates that they do have a room for potential [h]ospice.  This court has significant concerns about the other patients.  What about a patient that is not ambulatory[?]  This one is.  [Brissette] has already shown that he's willing to victimize a 14-year-old.  I don't think he has any trouble of taking advantage of vulnerable people there.  And at this point he's fully ambulatory.  This is a terrible plan and would put everybody at risk of

6.

this—at this facility. … And frankly, having this fully ambulatory murderer, a child molester roaming in a facility of [this] type is an outrageously ridiculous plan. Because he's fully ambulatory and has no qualms of taking advantage of vulnerable victims, he is not a suitable candidate for compassionate release. The motion is denied. We are adjourned at this time."

## DISCUSSION

### Parties' Arguments

Brissette argues that the trial court erred by denying his section 1172.2 petition. The CDCR notice from Bick established that Brissette met the clinical criteria for compassionate release under section 1172.2, subdivision (b)(1), which meant that compassionate release could be denied only if there was an unreasonable risk that his release would pose a danger to the public. However, the court prejudicially erred by using the wrong standard and concluding that, because Brissette was ambulatory and had the capacity to take advantage of vulnerable people, compassionate release was improper. Brissette also argues substantial evidence does not support the conclusion that his physical condition precluded release because he has serious and advanced medical conditions. Finally, Brissette argues that the court erred by failing to consider and explain why his current condition would make him an unreasonable danger if released, and instead simply relied on old acts that significantly predated his liver cancer.

The People argue that the trial court did not err. The court found that Brissette was ambulatory and stable and that his cancer was responsive to treatment. There was no evidence that Brissette was actively progressing to death, and thus, there was insufficient evidence that he was on an end-of-life trajectory. Further, the court recognized that Brissette's criminal history, prison disciplinary history, and current physical condition constitute substantial evidence that Brissette would pose an unreasonable risk of danger to the public if he were released.

We conclude that the trial court did not err by denying compassionate release.

**Legal Standards**

### 1. Section 1172.2

California law provides that if the statewide chief medical executive, after consultation with other clinical executives, determines that an incarcerated person meets either of two sets of statutorily established medical criteria, the CDCR "must recommend to the court that the incarcerated person's sentence be recalled." (§ 1172.2, subd. (a); *People v. Multani* (2024) 106 Cal.App.5th 1334, 1342 (*Multani*).) One of the medical criteria provides that the "incarcerated person has a serious and advanced illness with an end-of-life trajectory." (§ 1172.2, subd. (b)(1); *Multani*, at p. 1342; *People v. Lewis* (2024) 101 Cal.App.5th 401, 408.) If the trial court finds that the incarcerated person is in fact suffering from a serious and advanced illness with an end-of-life trajectory, then a presumption in favor of recall and resentencing arises. (§ 1172.2, subd. (b); *Multani*, at p. 1342; *Lewis*, at pp. 408–409.) The presumption "may only be overcome" if the court finds, "based on the incarcerated person's current physical and mental condition," that the incarcerated person would pose "an unreasonable risk of danger to public safety" if the sentence is recalled. (§ 1172.2, subd. (b); *Multani*, at p. 1343; *Lewis*, at pp. 408–409.) An "unreasonable risk of danger" is statutorily defined through incorporation of section 1170.18 (§ 1172.2, subd. (b)) to mean "an unreasonable risk that the [incarcerated person] will commit a new violent felony under [section 667, subd. (e)(2)(C)(iv)]." (§ 1170.18, subd. (c).) These violent felonies are known as " 'super strikes,' " and include murder, attempted murder, sexually violent offenses, and sexual offenses against minors under the age of 14. (*Multani*, at p. 1343; see also § 667, subd. (e)(2)(C)(iv); *People v. Valencia* (2017) 3 Cal.5th 347, 351, fn. 3; *Lewis*, at p. 409.)

A trial court's factual findings under section 1172.2 are reviewed for substantial evidence. (*Multani*, *supra*, 106 Cal.App.5th at p. 1343.) "Substantial evidence" is evidence that is " 'reasonable, credible, and of solid value,' " such that it " ' " 'reasonably inspires confidence.' " ' " (*People v. Collins* (2025) 17 Cal.5th 293, 307.) A court's

section 1172.2 rulings are reviewed for an abuse of discretion. (*People v. Lewis*, *supra*, 101 Cal.App.5th at p. 409; *Nijmeddin v. Superior Court* (2023) 90 Cal.App.5th 77, 83.) A court may abuse its discretion when it applies the wrong legal standard, bases its decision on express or implied factual findings that are not supported by substantial evidence (*People v. Moine* (2021) 62 Cal.App.5th 440, 449), or makes a ruling that is so erroneous that it falls outside the bounds of reason in light of the applicable law and relevant facts. (See *People v. Johnson* (2022) 12 Cal.5th 544, 605; *People v. Garcia* (1999) 20 Cal.4th 490, 503.)

### 2. General Appellate Review

"[W]e presume that a judgment or order of the trial court is correct, ' "[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." ' " (*People v. Giordano* (2007) 42 Cal.4th 644, 666; *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1139.) As a result, any ambiguity or uncertainty in the record will be resolved against the appellant. (See *People v. Moore* (2021) 68 Cal.App.5th 856, 866; *People v. Clifton* (1969) 270 Cal.App.2d 860, 862.) Further, because we examine a trial court's legal ruling, not its reasoning, if the ruling was correct on any theory or ground applicable to the case, then the ruling will be affirmed. (See *People v. Camacho* (2022) 14 Cal.5th 77, 123–124; *People v. Zapien* (1993) 4 Cal.4th 929, 976.) Finally, we will " ' " 'imply all findings necessary to support the judgment [or order],' " ' " so long as the implied findings are supported by substantial evidence. (*People v. Race* (2017) 18 Cal.App.5th 211, 217; *People v. Therman* (2015) 236 Cal.App.4th 1276, 1279 (*Therman*).)

### Analysis

The trial court's order is somewhat ambiguous because it does not clearly make findings envisioned by section 1172.2. Instead, the court noted specific aspects of the Study and then denied release because of the danger that Brissette would pose to the other residents of and visitors to his sister's facility. Subject to some exceptions, we

9.

believe that the particular aspects of the Study identified by the court represent the court's findings. So viewing the order, the court made the following relevant findings: (1) in 1979, Brissette raped or molested his 14-year-old sister-in-law, despite his wife telling him to stop;[4] (2) also in 1979, Brissette assaulted someone while brandishing a knife; (3) in 1976, Brissette argued with someone and then fired a shotgun at that person; (4) in 1984, Brissette murdered someone with a gun and there were numerous aggravating circumstances associated with the crime;[5] (5) Brissette has a lengthy disciplinary record in prison, which includes violations as recently as 2022 and 2023; (6) Brissette's prison disciplinary record includes violations involving force, violence, and assault;[6]

---

[4]     Brissette argues it was not established that he assaulted a 14-year-old with the intent to commit rape. Brissette also argues that there is no indication that he was convicted for violating section 220, subdivision (a)(2), which deals with crimes against individuals under the age of 18. However, in 1979, former section 220 did not have a subdivision (a)(2) or any subdivision. Moreover, a 1984 probation report and the Study both show Brissette was convicted of a section 220 offense against his 14-year-old sister-in-law. Brissette never objected in the trial court to this aspect of the Study or contended that his victim was not 14 years old. Thus, Brissette is precluded from now raising the issue in this appeal. (*People v. Scott* (1994) 9 Cal.4th 331, 351.)

[5]     Brissette's opening brief states that the Study contained information from his criminal history and a 40-year-old probation report, and that the information was "unreliable hearsay." However, Brissette never made any hearsay objections to the trial court. Further, Brissette's argument on appeal is a five-word sentence that is unsupported by citation to any authority. The failure to cite authority is noteworthy because some hearsay evidence may be considered at sentencing hearings. (*People v. Del Rio* (2023) 94 Cal.App.5th 47, 56–57.) Given the failure to object below, and the failure to adequately develop and support the argument here, we conclude Brissette has forfeited any hearsay issues associated with the Study. (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1318 ["Defendant forfeited his hearsay claim because he failed to object on that ground."]; *People v. Holford* (2012) 203 Cal.App.4th 155, 186 [unsupported and undeveloped arguments are forfeited on appeal].)

[6]     The trial court stated that the Study concluded Brissette's prison history involved "force, violence, assault, *and* predatory sexual behavior." However, the Study actually stated that Brissette's prison history involved "force, violence, assault, *or* predatory sexual behavior." (Italics added.) Further, while a review of Brissette's prison disciplinary record includes instances of combat with other inmates, stabbing other

10.

(7) Brissette's record is "replete" with incidents of assaultive behavior; (8) Brissette has the capacity to influence others;[7] (9) Brissette has the capacity to commit acts that endanger public safety; (10) Brissette has committed acts which indicate that he would be a danger to the public if released;[8] (11) Brissette has cancer; (12) the cancer is responsive to treatment; (13) Brissette is medically stable; (14) Brissette's prognosis is that he has months to years to live;[9] (15) Brissette can bathe, feed, and dress himself; (16) Brissette is ambulatory; and (17) Brissette has no problems taking advantage of vulnerable victims. In light of Brissette's plan to live at his sister's facility, and because he was fully ambulatory and had no qualms of taking advantage of vulnerable victims, the court concluded that Brissette was not a candidate for compassionate release. For two independent reasons, we conclude that these findings support the conclusion that Brissette is not entitled to compassionate release under section 1172.2.

---

inmates, and possession of weapons, it does not include any violations involving sexual behavior. Therefore, substantial evidence does not support a finding that Brissette's prison disciplinary record involves instances of predatory sexual behavior.

[7] We note that this finding is supported by a serious rule violation in which he "incited another inmate to disobey orders."

[8] The Study specifically states: "The inmate has committed other criminal acts, either before or during the current incarceration period, which indicates he would be a danger to the public if released ([r]efer to in-custody disciplinary history)."

[9] Brissette points out that Bick concluded Brissette had less than a year to live. This is true. However, the basis for Bick's prognosis is unclear and appears inconsistent with the study. The Study shows that Brissette's treating physician, Burgoyne, opined that Brissette had "months to years" to live. Reviewing physician Chakrabarty repeated Burgoyne's prognosis without limitation, which indicated agreement with that prognosis. The trial court clearly found Burgoyne and Chakrabarty's opinions to be more accurate because it repeated the "months to years" prognosis multiple times in its ruling, but did not once mention Bick's prognosis. Considering the opinions of Burgoyne and Chakrabarty, and the unknown reason for disagreement between Bick, Bourgoyne, and Chakrabarty, the court had ample basis to accept that Brissette had "months to years" to live.

11.

First, the trial court did not make an express finding as to whether Brissette met the clinical criteria of section 1172.2, subdivision (b)(1). The record clearly shows that Brissette has stage IV liver cancer that has metastasized, and the current treatment is not curative. Therefore, Brissette has a serious and advanced illness. However, an " 'end-of-life trajectory' requires, at a minimum, an illness that is progressing toward death at the time the petition is filed .…" (*Multani*, *supra*, 106 Cal.App.5th at p. 1350.) Here, the court found that Brissette's condition was stable and that the treatment, although not curative, was effective. In other words, although Brissette has a serious illness that cannot be cured by known treatments, the illness was responding to the treatment and not progressing. This is consistent with a prognosis that Brissette is stable and may have years to live. Therefore, the court's findings, which were supported by the Study, demonstrate that Brissette was not on an end-of-life trajectory at the time the section 1172.2 notice was filed. (See *Multani*, at p. 1350.) Because Brissette does not meet the clinical criteria of section 1172.2, subdivision (b)(1), he is not entitled to relief.[10] (See *Multani*, at pp. 1350–1351 [holding that an inmate who had an incurable solid-tumor cancer that was " 'suppressed' " by treatment was not on an end-of-life trajectory and thus, not entitled to release under section 1172.2]; see also *People v. Zapien*, *supra*, 4 Cal.4th at p. 976 [appellate courts may affirm a lower court on any legal ground supported by the record].)

Second, and alternatively, the trial court did not expressly hold that Brissette posed an unreasonable risk of committing a super strike if released. However, that is the clear implied finding that the court made.[11] In finding Brissette unsuitable for release, the

---

[10]     As in *Multani*, nothing forecloses the possibility that Brissette may obtain compassionate release in the future if his circumstances change. (*Multani*, *supra*, 106 Cal.App.5th at p. 1351.)

[11]     Brissette states without argument or citation to authority that the court made no implied findings. We decline to accept this unsupported assertion. (*People v. Davis* (2022) 75 Cal.App.5th 694, 721 [unsupported and undeveloped arguments are forfeited];

12.

court heavily considered Brissette's criminal history, which included the molestation of his 14-year-old sister-in-law, the murder of someone with whom he was arguing,[12] and the assault with a shotgun of another individual with whom he was arguing. The court also made note of Brissette's extensive prison disciplinary history, which included a number of violent infractions (some of which involved weapons) and included serious (though nonviolent) infractions as recently as 2023. Brissette's prison disciplinary history reflects an inability to satisfactorily follow appropriate rules. Indeed, the court noted that the Study itself stated that Brissette's behavior suggested that he would pose a danger to the public if released. The court also highlighted Brissette's proposed living arrangement if released. Brissette would go to a facility run by his sister, where he could interact with other residents, some of whom may be non-ambulatory, and young visitors. Finally, the court found that Brissette was ambulatory and willing to take advantage of vulnerable people. The record shows that Brissette is 6 feet 5 inches tall. As a large and ambulatory individual, Brissette has the ability to physically harm non-ambulatory or limited-ambulatory residents, as well as young visiting children, particularly if significant disagreements arise. We conclude that these considerations, that is Brissette's criminal history, disciplinary history, and current physical condition (stable and ambulatory), constitute substantial evidence that support the implied finding that Brissette would pose an unreasonable risk of committing a super strike against vulnerable fellow residents of, or young visitors to, his sister's facility if released. (§ 1172.2, subd. (b); *Therman*, *supra*, 236 Cal.App.4th at p. 1279.) This implied finding is not so erroneous that it exceeds the

---

*People v. Holford*, *supra*, 203 Cal.App.4th at p. 160 [same]; *People v. Watkins* (2009) 170 Cal.App.4th 1403, 1410 [same]; see also *People v. Race*, *supra*, 18 Cal.App.5th at p. 217 [appellate courts presume implied findings]; *Therman*, *supra*, 236 Cal.App.4th at p. 1279 [same].)

[12]     We note that there is nothing in the record to suggest that the victim was armed.

bounds of reason. (*People v. Johnson*, *supra*, 12 Cal.5th at p. 605.) Therefore, the court did not abuse its discretion by denying Brissette's section 1172.2 petition.

Brissette argues that the trial court applied the wrong standard because being fully ambulatory and having no qualms about taking advantage of vulnerable victims does not meet the requirements of section 1172.2, subdivision (b) for overcoming the presumption in favor of release. However, Brissette is taking a much too narrow view of the court's ruling and findings. While the court could have made its rulings clearer, the court identified Brissette's criminal and prison disciplinary histories, his existing physical condition, and his proposed living arrangements. The court then held that these considerations made him an unreasonable danger to the residents of and visitors to his sister's facility. In the absence of evidence to the contrary, we presume that the court knows and correctly follows the law. (*People v. Ramirez* (2021) 10 Cal.5th 983, 1042.) Given the nature of the court's rulings and its conclusion to deny compassionate release, there is clearly an implied finding that Brissette posed an unreasonable risk of committing a super strike against the residents of or visitors to his sister's facility. (*Therman*, *supra*, 236 Cal.App.4th at p. 1279.) That is consistent with the requirements of section 1172.2, subdivision (b). Therefore, the record does not sufficiently demonstrate that the court applied the wrong standard in evaluating compassionate release under section 1172.2.

## CONCLUSION

The judgment of the trial court is affirmed.